# Lovelace *et als. v.* Webb *et als.*

# Junkins *v.* Lovelace *et als.*

### *Bill in Equity to Redeem Lands, etc.*

|        |     |
| ------ | --- |
| 62     | 271 |
| 94     | 179 |
| 62     | 271 |
| 103    | 274 |
| 62     | 271 |
| 110    | 114 |
| 62     | 271 |
| 117    | 691 |
| 62     | 271 |
| 129    | 409 |
| 62     | 271 |
| 130    | 211 |
| 62     | 271 |
| 138    | 198 |

1. *Execution; purchaser at sale under, what acquires.*—The purchaser of property, real or personal, at execution sale, acquires no other or greater interest therein, than was possessed by the execution debtor at the time of the sale.

2. *Equity of redemption of lands; what purchaser of, at execution sale acquires.* Prior to the Code of 1852 an equity of redemption in lands was not the subject of a levy and sale under execution at law ; and, under the present statutes, the purchaser of such equity at execution sale, acquires no greater interest than the debtor, and is subrogated to all the rights, and subject to all the disabilities of the judgment debtor.

3. *Receiver; when should not be appointed.*—The purchaser at execution sale of the equity of redemption in mortgaged lands has no equity, upon seeking redemption from the mortgagee, to compel the application of personal property embraced in same mortgage, to the payment of the mortgage debt to the exoneration of the land; and the appointment of a receiver to take charge of such personalty, upon bill filed by the purchaser to redeem the mortgaged lands, and an order for its sale and the application of the proceeds to the mortgaged debt in ease of the land, are erroneous.

4. *Mortgage to secure future advances ; what embraces.*—A mortgage to secure future advances, which, on its face, gives notice as to the extent and purpose of the contract, will prevail over the claim of a purchaser at execution sale, under a levy made after its execution, although such execution issues on a judgment recovered prior to the execution of the mortgage ; and it is not necessary for such mortgage to specify any particular or definite sum which it is to secure ; it is sufficient to show a contract that it is to stand as security to the mortgagee for such indebtedness as may arise from future transactions with the mortgagor.

5. *Advancements by mortgagee to tenants of mortgagor ; right to priority of satisfaction out of crop grown on rented premises.*—A mortgagee who advances to tenants of the mortgagor, and who receives the crops grown by such tenants, has the right to apply such crops to the payment of such advances, after paying the rent due, in priority to the debt secured by the mortgage.

6. *Rent of mortgaged premises ; to whom belong.*—A mortgagor until the entry of the mortgagee, after condition broken, is entitled to the rents of the mortgaged premises, unless the mortgagee intercepts them by notice to the tenants; and the purchasers of the equity of redemption are entitled to rents falling due after their purchase, subject to all equities then existing.

7. *Homestead ; exemption of, as to debt contracted in 1866.*—The act of April 23, 1873, repealed all prior exemption laws as to debts contracted prior to the constitution of 1868, and the result was there was no law of force in April, 1875, which allowed to the heads of families any exemption of a homestead, as to a debt contracted prior to the adoption of the constitution of 1868.

APPEAL from Perry Chancery Court.

Heard before Hon. CHARLES TURNER.

The original bill in this case was filed by the appellees, Webb and Beck, against the appellants, C. W. & J. B. Lovelace, and George Junkins. The defendant Junkins filed a cross-bill, and the appeal by him is from the decree rendered thereon. The material facts may be thus stated: In the year 1873, Crenshaw Lovelace & Co., were merchants doing business in Marion. George Junkins was then engaged in farming. On the 11th day of January, 1873, Junkins executed his note to Crenshaw Lovelace & Co., for the sum of one thousand dollars, payable October 15, 1873, and on the same day, to secure the payment of the note, he executed a mortgage on all the crops raised by him during that year, two mares and two mules, and one four-horse wagon. This note and mortgage recited that they were made in consideration of advances to make a crop. This mortgage, as do all subsequent mortgages executed by him, contains a stipulation that it should stand as a security for any amount advanced in excess of the stipulated sum. Upon a settlement at the close of the year 1873, it was ascertained that Junkins was indebted to Crenshaw Lovelace & Co., in the sum of $1,406 66. On the 12th day of January, 1874, Crenshaw Lovelace & Co., agreed with Junkins to extend the time of payment of said balance of $1,406 66 until the 15th day of October, 1874, and, in addition thereto, agreed to advance him two hundred dollars to enable him to make a crop during that year, and on that day Junkins gave them his note for the sum of two hundred dollars, and to secure the payment of this note, and the balance then due them, he executed and delivered to them a mortgage signed by himself and wife, on the same personal property embraced in the mortgage of 1873, and on certain real estate in the county of Perry. This mortgage was acknowledged and filed for record on the day of its execution. In the latter part of the year 1874, or early in 1875, J. B. & C. W. Lovelace purchased of Crenshaw his entire interest in the firm of Crenshaw Lovelace & Co. At the close of 1874, Junkins was indebted to the firm in the sum of $1,460 60, which then, or soon after, became the property of J. B. & C. W. Lovelace, and the mortgages to secure the same was duly transferred to them. Junkins was unable to pay this balance, and it was agreed between him and the Lovelaces that he should be given an extension of the time of payment of such balance, until the first day of November, 1875, and that they would advance him three hundred dollars to make a crop during the year 1875. On the 25th day of March, 1875, Junkins gave his

note for the three hundred dollars, and to secure the amount and the balance, due the Lovelaces, he executed a mortgage to them, conveying all the crops raised by him that year and certain personal property. This mortgage recites the prior mortgages given to secure the balance due. During the year 1875, certain portions of the land owned by Junkins were rented by him to certain tenants. J. B. & C. W. Lovelace agreed to advance, and did advance, to these tenants, the necessary amount to enable them to make crops. The amount of these advances was charged to Junkins. As the tenants gathered their crops, they delivered them to the Lovelaces, who sold them and applied the proceeds, first, to the payment of advances due by them, second, to rent due to Junkins, and the balance was paid over to the tenants, and Junkins' account credited with the rent due to him.

On the 18th day of March, 1875, the appellee, James E. Webb, recovered a judgment in the Circuit Court of Perry county against Junkins, on a debt contracted in 1866, and on the 25th day of the same month the appellee, Henry Beck, recovered a judgment in the court, against Junkins. Executions were issued on each of these judgments on the 19th day of April, 1875, and were received by the sheriff on the 8th day of May, 1875. Each were returned "no property," and on the 23d day of October, 1875, *alias* executions were issued on both judgments, and were placed in the hands of the sheriff on the same day, and on the 2d day of December, 1875, both executions were levied on the lands conveyed by Junkins and wife to Crenshaw Lovelace & Co., in their mortgage dated January 12th, 1874. These lands were sold by the sheriffs under the *alias* executions, subject to Junkins' exemption, at which sale the appellees, Webb & Beck, became the purchasers, and the sheriff executed a deed to them bearing date 7th day of February, 1876.

At the close of the year 1875, Junkins, upon a settlement with the Lovelaces, was still indebted to them in the sum of $1,168. On the 26th day of January, 1876, the Lovelaces advanced to Junkins two hundred and fifty dollars to enable him to make a crop during the year 1876. Junkins gave his note for the amount advanced, and to secure this note and the balance due, gave the Lovelaces another mortgage dated January 26th, 1876, by which he conveyed to them all the crops raised by him during that year, and the same personal property conveyed by his prior mortgages to them. This mortgage was filed for record March 6, 1876.

On the 11th day of March, 1876, the appellees, Webb and Beck, filed their bill, in which, after setting out the rendition of their judgments against Junkins, the issuance of exe-

cution thereon, and the levy on, and sale of the lands thereunder, and their purchase at the sale, they allege that all of the transactions between Crenshaw, Lovelace & Co. and J. B. & C. W. Lovelace and the said Junkins are usurious, and that they have the right to have the indebtedness of said Junkins to them reduced in consequence thereof. They also allege that as to them, all of the mortgages made by Junkins to the Lovelaces are void, as to all advances made by them beyond the amount for which Junkins gave his promissory notes. They ask for a discovery as to the actual amount owing by said Junkins to said Lovelaces; that the personal property conveyed by Junkins to the Lovelaces be first sold and the proceeds be applied to the payment of the amount so ascertained to be due, and that they be permitted to pay the balance and redeem the land, or that the land be sold under decree of the court, and after paying the balance due the Lovelaces, the remainder be paid to them. They also claimed that they were entitled, as against the Lovelaces, to the rent of the land for the year 1876, and had the right to have the crops grown by Junkins that year first applied to the payments of these rents. They also prayed for the appointment of a receiver to take charge of the rents, &c., and the chancellor appointed the register such receiver.

At the fall term, 1876, the cause was submitted, and was held up for consideration and decree in vacation. On the 21st of December, 1876, the Chancellor rendered a decree, in which he decided that Webb and Beck were entitled to the rent of the land for the year 1876; that the Lovelaces were only entitled to the advances made by them to Junkins up to April 15th, 1875, not exceeding three hundred dollars in amount, including interest on the $1,460 and the usual commissions for advancing; that the complainants are entitled to have the personal property embraced by the mortgages first sold, and the proceeds applied to the mortgage debt, before resort could be had to the land, and ordered the Register to take possession of and sell the personal property embraced in the mortgages to the Lovelaces.

The Register executed the reference, and submitted his report, with the testimony taken by him, to the spring term, 1877. Exceptions to his report were filed both by the complainants and the Lovelaces, but before the hearing thereof, and during the same term of the court, the Lovelaces filed an application asking for a rehearing in the cause, and for a modification of the decree rendered. Upon the hearing of this application, the Chancellor granted the rehearing, and made another decree, so modifying the former decree as to allow the Lovelaces the full amount advanced by them to

[Lovelace et als. v. Webb et als.; Junkins v. Lovelace et als.]

Junkins in 1875, and also directing that, on another reference, the Register separate the advances made by the Lovelaces to Junkins in 1875, from the advances made by them to the tenant of Junkins during the same year. Another reference was had, and a report made to the Chancellor in vacation, as directed by the decree ordering the same. Exceptions were filed by both parties to this report, but before the same was heard or passed on by the Chancellor, the complainants, Webb and Beck, made a motion " to open, vary, alter and change the last preceding decree, on the ground that their judgments were a lien on the lands and property of Junkins, superior to the mortgage to the Lovelaces." This motion was heard by the Chancellor, at chambers, in Selma, and on the 25th day of June, 1877, he made another decree, declaring that the judgments of the complainants were liens prior to the mortgage of March 25th, 1875, and that the Lovelaces were not entitled to recover for any advances made by them to Junkins in 1875. The Lovelaces appeal from this decree.

At the sale under the executions in favor of Webb and Beck, Junkins gave public notice that he claimed one hundred and sixty acres of the land levied on, as his homestead exemption, and forbid the sale of said one hundred and sixty acres. The Chancellor decreed that Junkins was not entitled to any exemptions against the debt due to Webb, or against the debt secured by the mortgages to the Lovelaces executed by Junkins and his wife. The appeal of Junkins is taken from this decree.

LAWSON & MOORE, and BROOKS & ROY, for J. B. and C. W. Lovelace.—The Lovelaces acquired, by their mortgage of March 25th, 1875, a legal title to the crops raised by Junkins in 1875. It is too well established in this State to be questioned, that a growing crop, or crops to be raised, can be sold or mortgaged, and the purchaser or mortgagee acquire a good title.—50 Ala. 49 ; 48 Ala. 109 ; 47 Ala. 363 ; 18 Ala. 509 ; 14 Ala. 702 ; 11 Ala. 977 ; 5 Ala. 740. The consideration of this mortgage was ample and sufficient. Upon the execution and delivery by Junkins of the note and mortgage of that date, the contract was perfect and complete. The rights, duties and obligations of the parties were clearly defined. The judgments of Webb and Beck were not liens on the property of Junkins.—See *Dane v. McArthur*, 58 Ala. 320. At the time this mortgage was made, there were no executions in the hands of the sheriff, and even if there had been, they would constitute no liens on the crops of that year. Our statutes expressly forbid the levy of an execution on a

growing crop, and if the execution could not be levied on the crop, it could constitute no lien on it. The Lovelaces were entitled to the crops of 1876. The fact that the executions had been levied on the lands, could make no difference. Webb and Beck, by their purchase at the sheriff's sale, did not become the owners of the land. They only purchased Junkins' equity of redemption, and thereby became subject to his disabilities and subrogated to his rights only.—Code, § 3209; 31 Ala. 447. The law day of the mortgage of 1875, having passed, the Lovelaces were, as against Junkins, entitled to the possession of the land. Being entitled to it against Junkins, they were entitled to it against Webb and Beck, who stood precisely in his possession.—51 Ala. 222.

The appointment of a receiver is an extreme and harsh remedy, and it should never be done, except in cases where it is clearly shown to be absolutely necessary to protect the rights of the parties. It is not pretended that the Lovelaces were insolvent, or that they would not be able to respond to any decree the Chancellor might make. In the absence of any such showing, the Chancellor should not have appointed a receiver.

By their purchase, Webb and Beck acquired no right to have the personal property, embraced in the mortgages to the Lovelaces, sold and its proceeds applied in exoneration of the land. They had only the rights which belonged to Junkins, and he certainly could not have compelled such a sale. They acquired, by their purchase of the equity of redemption in the lands, no right in or title to the personal property, and there is no rule of equity by which they can assert or claim a right to have the personal property first applied to the payment of the mortgage debt. They acquired only the right to redeem the land, upon the payment of the mortgage.

JAMES E. WEBB, for Webb and Beck.—By their purchase at sheriff's sale, Webb and Beck acquired a right to be subrogated to the rights of the mortgagor, upon payment of the amount due the mortgagee, to have the personal property which is included in the same mortgage with the land, sold to the exoneration, either in whole or in part, of the land. The bill offered to pay what was due to the Lovelaces, and the enforcement of the mortgage after their debt was paid, could work no injury to them. The only person who could be affected by it was Junkins, the mortgagor, and he does not join in the assignments of error by the Lovelaces. Hence, if there was error in the Chancellor's decree, marshaling the mortgage securities, it was error without injury

to appellants, the Lovelaces.    While it may be admitted, that
only the equity of redemption passed by the sheriff's sale,
we insist that the personal property should be first applied
to the mortgage debt.    In equity, the mortgage stood solely
as a security for the debt, and the security was upon the
whole property, and though Webb and Beck bought only the
equity of redemption in the land, they bought that equity,
subject to the highly equitable principle that they would be
entitled to have the mortgage assets marshalled upon the
payment of the debt to the mortgagees.    The sheriff's deed
conveyed exactly what a deed from Junkins would have con-
veyed, and it will surely not be contended that if Junkins
had conveyed to Webb and Beck, upon payment by them of
the mortgage debt, they would not be entitled to be subro-
gated to the right of the mortgagees, for the purpose of hav-
ing the mortgage foreclosed on the property belonging to the
mortgagor which remained unsold.—See 56 Ala. 321; 35
Ala. 717.    As to the appeal by Junkins, the debt on which
the Webb judgment was recovered, was contracted in 1866.
At that time the statute declared what should be the exemp-
tion of the debtor.    There was no constitutional provision
in regard to exemptions.    The act giving the exemptions was
repealed, and the exemption was lost by its repeal.    The law
in force at the time the debt was created, is the rule by which
the exemption must be measured, and the statute in force at
the date of the contraction of the debt being repealed, the
subsequent enactment of constitutional and statutory pro-
visions in regard to exemptions, can exert no influence in
this case.

W. B. Modawell, for Junkins.—Webb and Beck did not pur-
chase the homestead of Junkins at the sheriff's sale.    They
purchased subject to his right of exemption.    Exemption
laws for the benefit of residents and families have always
been liberally construed.—1 Brick. Dig. 908, § 255; 28 How.
125; 45 Ala. 168; 1 Story Eq. § 560; 21 N. Y. 249; 48 N.
Y. 188.    Public policy requires a liberal construction of
homestead laws in favor of the owners.    If Webb and Beck
be permitted to subrogate themselves to the rights of the
mortgagees and thus deprive Junkins and his family of their
homestead, it would be an invasion of their rights secured
by the laws of Alabama, and contrary to a sound public pol-
icy recognized by all the States, and such a decree would
subvert the spirit and policy of the law.—*Andrews v. Rowan*,
28 How. 126.    Junkins interposed his claim to the exempted
property before it was sold, and he is entitled to the exemp-

tions allowed by the law, as it stood when he contracted the debt to Webb.

BRICKELL, C. J.—A sale of property, real or personal, under execution, passes to the purchaser no other or greater interest than that which the defendant may have when the lien of the execution attaches, or may acquire before the sale, no question arising as to conveyances by the debtor in fraud of creditors. The lands claimed by the appellees, Webb and Beck, as purchasers at execution sale, were under a mortgage prior to the rendition of the judgments and the issue of executions thereon, under which they purchased, the validity of which is undisputed. The only interest of the judgment debtor was an equity of redemption. The statute subjecting to levy and sale, under execution at law, an equity of redemption in either land or personal property declares : "The purchaser is subrogated to all the rights of the defendant, and subject to all his disabilities."—Code of 1876, § 3209.

Prior to the Code of 1852, an equity of redemption in lands was not the subject of levy and sale under execution at law. It is a valuable interest in and to lands ; in equity comprehending the beneficial ownership, the mortgage being regarded as a mere security for the payment of the mortgage debt. Through the medium of a court of equity, judgment creditors could redeem, or they could compel the mortgagee to a foreclosure by sale, and subject to the satisfaction of the judgment, whatever surplus of the proceeds of sale remained after satisfying the mortgage. The purpose of the statute is to benefit the mortgagor and his judgment creditors alike, by subjecting the equity of redemption to levy and sale under execution at law, avoiding the delay and expense of a suit in equity, and having it applied to the payment of debts other than the mortgage debt. When the sale is made, however, it is of the equity of redemption, of no other or greater interest, and the statute in words expresses the legal consequence—the purchaser *is subrogated to all the rights, and subject to the disabilities* of the mortgagor. The mortgage remains as valid and operative as a security, encumbering the lands to the same extent it encumbered them while the equity of redemption remained in the mortgagor. The premises continue the primary fund for the payment of the mortgage debt, and the purchaser of the equity of redemption takes it subject to the paramount lien of the mortgage. His purchase is of the equity only ; it is its value only, the law intends, for which he bid and paid. While he incurs no personal liability for the payment of the mortgage

debt, whatever of interest he acquires in the land is subject to the mortgage.—*Meyer v. Prayn*, 7 Paige, 470; *Vanderkamp v. Shelton*, 11 Paige, 28; *Fink v. Reynolds*, 33 Ill. 495; *Stephens v. Church*, 41 Conn. 369; *Tice v. Annin*, 2 Johns. Ch. 128. The mortgagor is not bound legally or equitably to pay the mortgage debt, or contribute to its payment, for the ease or benefit of the purchaser of the equity of redemption.—*Cherry v. Munn*, 2 Barb. Ch. 318; *Russell v. Allen*, 10 Paige, 249. Nor to aid in redemption has the purchaser the right to require that the mortgagee shall exhaust other securities for the payment of the mortgage debt.—*Stephens v. Church*, 41 Conn. 369. The principle prevailing in the marshaling of assets, or between creditors with liens or incumbrances, that when one has a lien on two different parcels of land, or on two funds, and another has a junior lien on one only of the parcels, or on one only of the funds, the prior creditor or incumbrancer will be compelled to exhaust that fund first, to which the junior cannot resort, cannot be invoked by the purchaser. He stands in the place of the mortgagor, having no other or greater rights, and is *subject to his disabilities*. A debtor, bound absolutely to the payment of his debt, (unless his homestead rights are involved, and as to these we express no opinion,) can have no equity to compel the election of his creditor, as to which of two funds equally liable, shall be applied in payment of the debt. *Rogers v. Meyer*, 68 Ill. 92. Payment of the debt, his legal and moral duty will relieve each fund. The rights of the purchaser of the equity of redemption are no other or greater than the rights of the mortgagor.

The principle is a pure equity, founded in a broad and comprehensive justice, akin to the maxim, *sic utere tuo ut alienum non lœdas*. It is never applied and enforced, to the injury, or to lessen the rights of third persons. If the purchaser could compel the mortgagee to exhaust other securities for the payment of the mortgage debt, to aid him in redemption, the injustice would result of compelling the mortgagor to pay, or contribute to the payment of the mortgage debt, increasing the value of the equity of redemption for the benefit of the purchaser. The equities of the mortgagor and of the purchaser would be reversed, as between them the land is primarily liable for the payment of the mortgage debt, and if that should be satisfied from other property of the mortgagor, a court of equity would subrogate him to the rights of the mortgagee against the land. In *Tice v. Annin*, 2 Johns. Ch. 128, said Ch. Kent: "If a judgment creditor, other than the mortgagee, sells the equity of redemption, the mortgagor reaps the benefit of that equity, by having it ap-

plied towards the payment of his other debts, and the mortgage debt remains, without any confusion, as a distinct and separate incumbrance; and if the mortgagee, in such a case, should elect to proceed against the original debtor at law, instead of seeking to foreclose his mortgage, and should endeavor to collect his money out of other property of the mortgagor, this court must either stay such a proceeding, or compel him, upon payment, to assign over his debt and security to his debtor, so as to enable the debtor to indemnify himself out of the mortgaged premises. The one course or the other would be indispensable to prevent the purchaser of the equity from obtaining and holding the whole interest in the land, when he purchased and paid only the value of the equity of redemption." Nor can any inquiry be entered upon as to whether the purchaser bid and paid more than the real value of the equity of redemption. The maxim, *caveat emptor*, applies in all its rigor to judicial sales, and no fraud being imputable, the injudiciousness of the purchaser cannot create an equity in his favor.—*O'Neal v. Wilson*, 21 Ala. 288. The necessary legal intendment is, that he paid no more than the value of the equity of redemption, the value of the lands, the mortgage debt being deducted, and if he could throw the payment of the mortgage debt on the mortgagor personally, or on other property of the mortgagor, he would obtain an interest in the lands he had not bought, and for which he had not paid. It results, the Chancellor erred in appointing a receiver to take charge of the personal property conveyed by the mortgage, and in ordering its sale, and the application of the proceeds of sale to the payment of the mortgage debt.

There is great contrariety of opinion as to the validity, and the operation of mortgages intended as a security for future advances, and when the rights of judgment creditors, or of subsequent purchasers, or of junior incumbrancers, are involved, many difficult and embarrassing questions arise.

The Supreme Court of Mississippi, in a very careful opinion, state a view of the doctrine, which seems to us supported by principle and by the weight of authority: "A mortgage to secure future advances, which on its face gives information as to the extent and purpose of the contract, so that a purchaser or junior creditor may, by an inspection of the record, and by ordinary diligence and common prudence, ascertain the extent of the incumbrance, will prevail over the supervening claim of such purchaser or creditor as to all advances made by the mortgagee within the terms of such mortgage, whether made before or after the claim of such purchaser or creditor arose. It is not necessary for a mort-

gage for future advances to specify any particular or definite sum which it is to secure. It is not necessary for it to be so completely certain as to preclude the necessity of all extraneous inquiry. If it contains enough to show a contract that it is to stand as a security to the mortgagee for such indebtness as may arise from future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry, and, if he fails to make it in the proper quarter, he cannot claim protection as a *bona fide* purchaser."— *Witczinski v. Everman*, 51 Miss. 846 ; see, also, 1 Jones on Mort. § 364, *et seq.*, and authorities cited. We do not understand that the case of *Allen v. M. R. R. Co.* 11 Ala. 451, conflicts with this view. The mortgage or trust deed in that case, was not a security for a creditor who had come under an obligation, express or implied, to the mortgagor to make future advances. Its object was to secure bonds issued, and to be issued for the construction of a railroad. Until the issue and negotiation of the bonds the mortgage was inoperative as a security—there was no creditor to whom the mortgagor was bound, and none under any obligation to him. But when there is a contract existing, on the faith of which and the security of the mortgage, the creditor makes advances, and promises future advances to a definite amount, or for a specified purpose, the mortgage is a valid security for all the advances the creditor has bound himself to make, and will prevail over subsequent incumbrances, whether these are created by the contract of the mortgagor, or by operation of law.—1 Jones Mort. §§ 364, 370–372.

In the present case, the mortgage recites as one of the debts secured, the sum of three hundred dollars advanced on the day of the execution of the mortgage, to enable the mortgagor to make a crop. The proof shows that sum was not then advanced, but there was a verbal agreement that it should be, and it was advanced for the purpose expressed, during the year in which the crop was raised. The verbal agreement was sufficient—it imposed on the mortgagees the duty of making, and the liability to make advances to the amount expressed, and from the duty and liability they were not absolved, because before the amount had been advanced, judgments were rendered and executions issued against the mortgagor, of which they had no notice ; and of the fact of notice, at any time before they had made the advances, this record furnishes no evidence.—1 Jones Mort. § 375. The mortgage was properly recorded, and whoever after its execution, acquired any lien or encumbrance on the property mortgaged, acquired it with constructive notice of the prior right, duty and liability of the mortgagees, and in subordination

to it. The chancellor consequently erred in disallowing the lien of the mortgage, as a security for the advances, to the full amount expressed, whether the advances were prior or subsequent to the lien of the executions under which Webb and Beck purchased the equity of redemption in the lands. It seems to be supposed, the judgments operated a lien, and as the mortgage was subsequent to their rendition, it could not as against them afford a security to the mortgagees. The chancellor was misled by a decision of this court, which was recalled during the term it was rendered, but not recalled until he had pronounced judgment. Judgments are not liens—the execution operates a lien, " on the lands and personal property of the defendant, subject to levy and sale, from the time only that the writ is received by the sheriff." Code of 1876, § 3210. The mortgage was prior to the delivery of executions to the sheriff, and of consequence had precedence over them, for all advances made to the extent of three hundred dollars.

Whatever advances were made to the laborers of the mortgagor, by the mortgagees, should be deducted from the proceeds of the sales of the crops, so far as they were received by the mortgagees, in priority of the three hundred dollars advanced to the mortgagor and the precedent mortgage debt. There is manifest injustice in permitting the mortgagor, or his judgment creditors, or the purchasers of the equity of redemption in the lands, to claim the benefit of the proceeds of the sales of the crops, until these advances, which were contributions to the production of the crops, have been paid.

The rents for 1875, which Junkins may have received, or which the tenants may have paid to the mortgagees, stand on a different footing. The appellees either as judgment creditors, or as purchasers of the equity of redemption, have not a shadow of claim to them. As purchasers of the equity of redemption, they can have none, because their purchase was subsequent to the time when the rents accrued. As judgment creditors they can have none, because on the rents their executions were not a lien. In the accounting of the mortgage debt, they ought not to be computed, unless before the sheriff's sale, the mortgagor, or mortgagee, had applied them to the payment of the mortgage debt, and then only to the amount which remained after satisfying the advances made to the tenants by the mortgagees.

A mortgagor, until the entry of the mortgagee, after condition broken, is entitled to the rents and profits, unless the mortgagee intercepts them by notice to the tenants. The purchasers of the equity of redemption became entitled to the rents of 1876, falling due after the conveyance to them.

*Smith v. Houston,* 16 Ala. 111; *Tubb v. Fort,* 58 Ala. 277.
As assignees of the mortgagor by operation of law, they became entitled to the rents; and they take them subject to all the equities, to which they were subject before and at the time of the assignment.—Taylor's Land. & Tenant, § 437. Whatever advances were made to the tenants, by the appellants, under the mortgage of the crops of 1876, must be deducted from the rents, and it is the remainder only to which the appellees are entitled. The mortgage was executed, and an equity in favor of the appellants created before the assignment to the appellees, and to the equity the assignment is subject.

The decree of the chancellor on the original bill must be reversed, and the cause remanded for further proceedings in conformity to this opinion.

The questions arising in the appeal from the decree on the cross-bill, are *first,* as to the right of the mortgagor to a homestead in the premises, he having but an equity of redemption therein; *second,* whether as against the appellee Webb, whose judgment was founded on a contract or debt created in 1866, the laws of force when the judgment was rendered, and the sale made allow a homestead? The *second* question alone is necessary to consider. The exemption of property, real or personal, in which a debtor has an actual beneficial interest, from liability for the payment of debts, is derived from, and dependent on statutory or constitutional provision. The statute, or constitutional provision of force, when the debt is contracted, not subsequent statutes or constitutional provision, define and declare it. When the debt to Webb was contracted, the statutes were of force subjecting to levy and sale, an equity of redemption in real estate, or in personal property, and they have been continued without interruption.

The constitution of 1868, which the constitution of 1875 follows in this respect, declared exemptions of property from liability for debts, but limited the exemptions to debts contracted subsequent to the time when these constitutions became law. Before either constitution, it had been a legislative policy, to save debtors, the heads of families, having on them wife or children, in a condition of legal dependence, whom they were bound by law to maintain, from being reduced to want and inability to discharge the legal duty of maintenance. Various statutes founded in this policy, were from time to time, through a period of more than forty years enacted, and were incorporated in the Revised Code of 1867. The act of April 23, 1873, in all its terms, letter and spirit, a revision of all former statutes relating to the subject (Pamph.

Acts 1872–3, p. 64), repealed in express words and by express reference to the Revised Code, the former statutes to which we have referred, and " all other statutory laws and parts of statutory laws, heretofore in force in this State, exempting property from the payment of debts or administration, or relating thereto." The result was, that as to all debts contracted prior to the adoption of the constitution of 1868, after the enactment of this statute, there were no exemptions of any property to heads of families, or to the resident having no family. The statutes in existence when the debt was contracted, were repealed. The exemptions allowed by the act of April 23, 1873, passed after the debts were created, different from and exceeding those allowed by former statutes, could not be claimed. The constitution of 1868, applied to debts contracted after its adoption, and not to prior debts. There was then no law of force when the lien of Webb's execution obtained, and when the sale by the sheriff was made, under which an exemption could, as against it, be claimed. The purchaser at execution sale takes the property with the full benefit of the lien of the execution. The sheriff, by virtue of the lien of this execution, whatever may have been the rights of the defendant as against the execution in favor of Beck, could sell and convey to the purchaser the equity of redemption, free from the claim or right of homestead of the mortgagor. There was no such right as against the purchasers at the execution sale—no law conferring it. The cross-bill was, therefore, properly dismissed, and the decree of dismissal is affirmed.