# Collier & Son *v.* Faulk & Martin.

*Special Action on the Case and Trover joined.*

2. *Mortgage of unplanted crop; does not pass legal title; equitable lien merely conferred; remedy of mortgagee.*—A mortgage of an unplanted crop of cotton does not pass to the mortgagee such title as, without possession taken thereunder, will support trover, trespass or detinue; but an equitable lien is thereby conferred, which, though it can not be enforced *as such*, except in equity, can be made the basis of an action on the case against a stranger, who, with notice of the lien, destroys, removes or conceals such crop; or of an action of assumpsit for money had and received against one to whom the mortgagee has sold or otherwise disposed of the crop, and who, with notice of the lien, himself sells it and receives the proceeds of sale.

2. *Crop lien note operates a lien only for the amount expressed therein.* A crop lien note, executed in accordance with the requirements of the statute, for an amount expressly named therein, but containing also a stipulation, that it shall stand as security for any additional advances over and above such amount, can not operate a valid security for such additional advances, but only for the amount expressly named in the note.

3. *Mortgage executed to secure future advances; its validity and operation.*—A mortgage executed to secure future advances, if not tainted with bad faith or fraud, is just as valid as if made to secure past indebtedness, not only as between the parties, but also as against subsequent purchasers and encumbrancers, with notice, so far, at least, as respects advances made before the equities of such purchasers or encumbrancers had attached; nor is it necessary that a *definite* or *specific* sum should be stated in such mortgage, as the ultimate amount intended to be secured, all that is required being that the mortgage should describe the nature and amount of such advances with reasonable certainty, so that they may be ascertained by the exercise of ordinary diligence on proper inquiry.

4. *Rule of construction of statutes.*—It is the ordinary right of every citizen to contract with reference to his own private property and rights, just as he may see fit, provided only he use his own so as, in no manner, to injure another, and in no wise to offend any principle of public policy; and no law should be construed to abrogate this right unless such is its manifest intention.

5. *When contract constitutes contracting parties tenants in common.*—Independent of, and apart from the influence of § 3475 of the Code, a contract between two parties farming together, by the terms of which one is to furnish the land and stock and feed for stock, and the other all the labor to make a crop, the crop when made to be equally divided between them, constitute the parties thereto tenants in common of the crop raised by them under the contract.

6. *Sections 3474 and 3475 of the Code construed.*—The act of February 9, 1877 (Acts 1876-7, p. 74), which is now partially embraced in sections

[Collier & Son v. Faulk & Martin.]

3474 and 3475 of the Code, did not totally abrogate or abolish the relation. of tenants in common in the cases coming within the purview of the act, but only modified it so as to give to each tenant in common a lien on the share of the other in the crops jointly raised, with the remedy of enforcing it by attachment. (BRICKELL, C. J., *dissenting*.)

APPEAL from Pike Circuit Court.

Tried before Hon. JOHN P. HUBBARD.

The appellants, on 20th September, 1880, brought this suit against the appellees. The complaint, as amended, contained two counts, one in trover and the other in case, in both of which the appellants sought to recover the value of four bales of cotton, alleged to have been part of a crop grown by one Marsh, in the year 1879, on which appellants had a mortgage and also a crop lien note, both executed by Marsh, which cotton the appellees purchased from Marsh, with notice of appellants' mortgage and note. The defendants pleaded "the general issue and payment of the mortgage debt." On the trial the appellants read in evidence a crop lien note made by Marsh, for $100.00 dated 18th January, 1879, and payable to them on 1st October, 1879, the terms of which, except a provision for additional advances, were in conformity with the requirements of the statute; and also a mortgage on Marsh's "entire crop grown the present year by him or under his direction in Pike County, Alabama," of even date with the note and securing the same, as well as "any advancements that may be advanced under said lien note or otherwise in goods, wares or merchandise of any description, or money during the present year." Both the note and mortgage were shown to have been duly recorded in said county. The evidence also tended to show that Marsh and one Reeves "farmed together in the year, 1879, under contract substantially as follows: that the said Reeves furnished the land and stock and feed for the stock and Marsh furnished all the labor, to make the crop during said year, and the crop was to be divided between them in equal proportions;" that under said contract Marsh and Reeves made a crop of cotton in said county during said year, and that of the crop so raised Marsh sold three bales of cotton to the appellees; that the note had been paid, but that Marsh owed appellants a balance for advances which, during said year, they had made to him over and above the amount stated in the note. This being substantially all the evidence, the court charged the jury, at the written request of appellees, defendants in the court below, that if they believed the evidence they must find for the defendants; and to the giving of this charge the appellants excepted, and here assign the same as error.

M. N. CARLISLE, for appellant.

[Collier & Son v. Faulk & Martin.]

GRIFFIN & WOOD, *contra.*

SOMERVILLE, J.—If the only count in the complaint in this case had been in trover, the charge given by the court, that the jury must find for the defendants if they believe the evidence, would have been correct. It would be supported fully by the cases of *Grant v. Steiner*, 65 Ala. 499, and *Rees v. Coats*, Ib. 256, in which it was held, that the mortgagee of an unplanted crop of cotton acquired no such title as would support an action of *trover*, *trespass* or *detinue*, at least before possession taken under the mortgage.—*Cook v. Corthell*, 23 Amer. Rep. 518.

But such a mortgage confers an equitable lien, which, though it can not be enforced *as such*, except in equity, can be made the basis of an action of assumpsit for money had and received, or an action on the case at law. Where the tenant has sold or otherwise disposed of the crop to a purchaser who, having notice of the landlord's lien, himself sells and receives the proceeds of sale, *assumpsit* is the proper remedy.— *Westmoreland v. Foster*, 69 Ala. 448; *Thompson v. Merriman*, 15 Ala. 166.

So it is also settled that the landlord, not having waived his lien, may maintain a special action on the case against a stranger with notice of the lien, who destroys, removes or converts the crop to his own use—*Hussey v. Peebles*, 53 Ala. 432.

The complaint contains a special count in *case*, and we think that, under the evidence disclosed in the bill of exceptions, the charge of the court below was erroneous.

The plaintiffs, upon the trial in the Circuit Court, introduced in evidence a *crop-lien note*, executed January 18, 1879, which purported to be for one hundred dollars, and was secured by lien on the crops and other personal property of Marsh, the obligor. It also contained a stipulation that it should stand good for future advances. It could be, however, under no circumstances, a valid security for more than the amount expressed in the *written note* or *obligation* executed by Marsh. The statute is too clear for argument on this point.—*Evans v. English*, 61 Ala. 416; Code, 1876, § 3286. The testimony showing that this note had been *paid*, the recitals in it were not effectual as a security for sums left indefinite, and for the payment of which there was no written promise or obligation.

It would, however, be otherwise with the *mortgage* executed by Marsh on the same day, which was given to Collier & Son, the appellants, not only to secure the note of $100.00, but also as security for any advances that the mortgagees might make to the mortgagor during the current year, whether in money or otherwise.

The question has been much discussed as to how far mortga-

ges of this character for *future advances* are good, and what should be the nature of their recitals. It seems to be clearly settled that, if they are not tainted with fraud, or bad faith, they are just as valid as if made to secure past indebtedness, not only as between the parties, but also as against subsequent purchasers and incumbrancers, so far, at least, as respects advances made before the equities of such purchasers or incumbrancers have attached.—*Divver v. McLaughlin*, 20 Amer. Dec. 653, and *note*; *Hubbard v. Savage*, 8 Conn. 215; *Lovelace v. Webb*, 62 Ala. 271; *Summers v. Roos & Co.*, 2 Amer. Rep. 658; *Bank v. Cunningham*, 24 Pick. 270; *Robinson v. Williams*, 22 New York Rep. 380; *Ward v. Cooke*, 18 N. J. Eq. 93; 4 Waits Act. & Def. 541–42.

Nor is it necessary in such a mortgage that a *definite or specific sum* should be stated on the face of the instrument as the ultimate amount intended to be secured. There is, it is true, a considerable diversity of opinion on this subject, but this conclusion is sustained by the weight of authority as the sounder principle.—*Divver v. McLaughlin*, (*supra*) 20 Amer. Dec. 658; 1 Jones on Mortg. §§ 364–7; *Lovelace v. Webb*, 62 Ala. 271. All that can be required is, that a mortgage designed to secure such future liabilities should describe the nature and amount of them with reasonable certainty, so that they may be ascertained by the exercise of ordinary diligence on proper inquiry. 1 Jones on Mort. § 367; *Wilczinski v. Everman*, 51 Miss. 841; *Stoughton v. Pasco*, 13 Amer. Dec. 72; *Divver v. McLaughlin*, 20 Amer. Dec. 661, *note*.

We think that the description of the liability intended to be secured by Marsh's mortgage to appellants was sufficiently definite. It is recited there to be any advances that may be made in goods, wares or merchandise, of any description, or money, during the year 1879. This gave an equitable lien on the crops raised by the mortgage for that year, and the registration of the mortgage was constructive notice to all persons in the county where recorded, who purchased the mortgaged property. *Allen v. Lathrop*, 46 Ga. 133; *Insurance Co. v. Brown*, 11 Mich. 265; *Robinson v. Williams*, 22 N. Y. 380; *Ward v. Cooke*, 17 N. J. Eq. 93; *Bissell v. Kellogg*, 60 Barb. 617; 4 Wait's Act. & Def. 588–589.

It is insisted that the mortgagor, Marsh, had no mortgageable interest in the cotton in controversy, as he furnished only the *labor* to cultivate it, and Reeves the *land* and *teams*—that, notwithstanding their express agreement to farm on shares as tenants in common, the contract of hire only existed between them under the provisions of section 3475 of the Code.

Apart from the influence of this statute, it has long been settled in this State, that contracts like that between Reeves

and Marsh, by which they were to farm on shares and divide the crops in equal proportion between them, created the relation of tenants in common.—*Smyth v. Tankersley*, 20 Ala. 212; *Williams v. Nolen*, 34 Ala. 167.

Was it the intention of the General Assembly to abolish this relation *in toto*, in all cases coming within the influence of this statute, or only to modify it *sub modo*, so as to effect the purpose of the statute? While the question is not entirely free from difficulty, we are inclined to the latter view.

The plain purpose of the act of February 9, 1877 (Acts 1876–77, p. 74), which is now partially embraced in sections 3474 and 3475 of the Code, was to protect both the rights of the landlord and of the agricultural laborer, so as to furnish each an efficient remedy against the frauds or unfair dealings of the other. This is effected by securing to each a lien on the share of the other in the crops jointly raised, and held as tenants in common, with the remedy of enforcing it by attachment. Where this remedy is invoked by either, the plaintiff's interest in the crop is reduced, by operation of the statute, to a moneyed valuation, and enforced as a lien debt against the co-tenant by attachment. For this purpose, and to this extent, the relation of landlord and tenant, with all its incidents and rights, in the one case, and the contract of hire, with the relation of employer and employee in the other, are declared respectively to exist. When this protection is secured, the function of the statute is fulfilled, and the legislative purpose accomplished. The rights and relation of the contracting parties must be construed to remain as fixed by themselves, and are not intended to be abrogated or destroyed to any greater extent than is required to carry out the legislative intent.

This conclusion, we think, is based on a general rule of construction applicable alike to all statutes. It is the ordinary right of every citizen to contract with reference to his own private property and rights just as he may see fit, provided only he may use his own so as in no manner to injure another, and in no wise to offend any principle of public policy. No law should be construed to abrogate this right unless such is its manifest intention.

This construction, too, is in better harmony with section 3479 of the Code, which preserves the relation of tenants in common in cases where persons farm on shares, and adopts the same policy of mutual protection by giving each part-owner of the crops a lien on the share of the other for certain expenses incurred in cultivating and gathering them.

It can not be argued that the legislature intended by the provisions of section 3475, to protect the land-owner ·by securing to him the exclusive legal title to the crops, and that for this

[Levy & Co. v. Moog.]

purpose the contract of hire was substituted for the relation of tenants in common. For, if the laborer happens to furnish the teams, under a similar construction of section 3474, the legal title of the crops would at once vest exclusively in the laborer, leaving only a naked lien for the landlord. Our conclusion, therefore, is that Marsh owned an undivided half interest, as tenant in common, with Reeves under the contract between them to farm on shares, and that he had a lawful right to mortgage his interest to the appellant.

As the evidence in the case showed that about one hundred and eighty dollars was due appellants under the mortgage for advances made to Marsh, the mortgagor, and remained unpaid, the charge of the court was erroneous, and its judgment is reversed and the cause is remanded for further proceedings in accordance with the principles announced in this opinion.

BRICKELL, C. J., dissenting on the last point, as to the construction of §§ 3474–75 of the Code.