# Gassenheimer, Adm'r, *v.* Molton, *et al.*

*Bill in Equity between Purchasers at Execution Sale.*

1. *Sale under power in mortgage ; purchase by mortgagee at his own sale.*—When lands are sold under a power contained in a mortgage, the sale cuts off the equity of redemption as effectually as a sale under a decree of foreclosure in equity, leaving in the mortgagor nothing but a statutory right of redemption; but, if the mortgagee becomes the purchaser at his own sale under the mortgage, he thereby arms the mortgagor with an option, if seasonably expressed, to disaffirm the sale, without regard to its fairness, or to the adequacy of the price; and when the sale is set aside, under bill filed within a reasonable time, the decree relates back to the day of the sale, and the parties are placed *in statu quo* as if no sale had been made.

2. *Sale of equity of redemption, under execution at law.*—An equity of redemption in lands may be sold under execution at law against the mortgagor (Code, § 3209), either before or after the law day and default, and whether the mortgagor or mortgagee is in possession.

3. *Same ; form of levy, and interest of purchaser.*—A judgment creditor of the mortgagor may levy his execution on the equity of redemption only, or on the land generally, not designating the interest of the mortgagor; the purchaser acquiring, in the former case, only the equity of redemption, and being estopped to deny the validity of the mortgage; and in the latter, the entire interest of the mortgagor, whether the mortgage is valid or invalid, paid or outstanding.

APPEAL from Montgomery Chancery Court.

Heard before Hon. JNO. A. FOSTER.

The original bill in this cause was filed on 21st January, 1886, by Simon Gassenheimer, administrator of the estate of Jacob Levy, deceased, against Marshall H. Molton and Mrs. A. A. Ware, the case made by the record, so far as essential to

[Gassenheimer, Adm'r, v. Molton et al.]

this report, being substantially as follows : The complainant's intestate, Jacob Levy, on 12th February, 1875, obtained a judgment in the City Court of Montgomery against the respondent, Mrs. A. A. Ware, for $678.40 ; on 26th May, 1875, execution was issued on said judgment, and regularly returned "no property found ;" and a number of *alias* executions were likewise issued and returned until April, 1876. In September, 1884, execution was again issued on said judgment and was placed in the hands of the sheriff, and a series of *alias* executions was regularly kept up, without the lapse of a term, until, in January, 1886, execution was again issued, placed in the hands of the sheriff, and levied by him on "the equity of redemption of Mrs. Ware, and on any interest she may have, subject to execution in the house and lot in the city of Montgomery, known as the Ware place," describing it by location and boundaries. On 24th January, 1872, the said respondent, Mrs. A. A. Ware, executed a mortgage on said house and lot to Shemei Gresham, to secure a designated indebtedness, said mortgage containing a power of sale, on the maturity of the debt, twelve months after the date of its execution, in the event of default in payment. On 17th October, 1881, default having been made, the property was sold under the power of sale, at which sale said Gresham bought, and immediately went into actual possession and continued in possession, claiming title to the premises under his purchase at the mortgage sale, at the time of the institution of Mrs. Ware's suit for redemption.

On the 21st February, 1882, Mrs. Ware filed her bill to set aside the sale and to be permitted to redeem, and offering to pay any balance which might be ascertained to be due Gresham ; alleging payment and the reception of rents by said Gresham, and submitting herself to the jurisdiction of the court for any decree foreclosing the mortgage. On 1st October, 1884, the Chancery Court rendered a decree in substantial accordance with the prayer of the bill, setting aside the sale by Gresham under the power in his mortgage and allowing Mrs. Ware to redeem. From this decree said Gresham appealed to this court, giving a *supersedeas* bond. The decree of the chancellor was affirmed in January, 1886 ; and "the case is still pending in the Chancery Court undetermined finally."

On the 15th December, 1870, the respondent, Marshall H. Molton, recovered a judgment in the Circuit Court against Robert Y. Ware for $3,090.00. Ware appealed to the Supreme Court, giving a *supersedeas* bond, with Mrs. A. A. Ware as one of the sureties. On the 11th January, 1873, the judgment of the Circuit Court was affirmed, with damages. In May, 1884, no execution having issued on the judgment as

[Gassenheimer, Adm'r, v. Molton et al.]

affirmed, *sci. fa.* was issued to revive it; and in July, 1884, the judgment was revived against Mrs. Ware alone, the said Robert Y. Ware having been discharged in bankruptcy. On the 8th August, 1884, execution on this revived judgment was issued "and levied on the city lot in Montgomery, and not on any equity of redemption Mrs. Ware had in the same;" and on the 1st Monday in October, 1884, it was sold by the sheriff and bought by the respondent, Marshall H. Molton, for the sum of $6,900.00 ; which satisfied said judgment and the execution was so returned by the sheriff. The sheriff executed a deed to said Molton conveying to him "all the legal right, title, interest and claim which the said Asenath A. Ware had and held in and to the foregoing described premises," and this deed was duly placed upon record. The bill avers that, "at the time of said levy and sale, under said execution, said Gresham was in the actual possession, occupancy and control of said property under his purchase, as aforesaid, at said mortgage sale, and that at said time said suit in the Chancery Court of Montgomery county, between the said Asenath A. Ware and the said Gresham was pending and wholly undetermined and that the same is now pending for the purpose of adjusting the accounts between the parties." It was further alleged in the bill that, "at the time of said levy and sale of said property under said execution " the said Asenath A. Ware "had no interest in the said property subject to levy and sale under execution, her only interest then being her statutory right of redemption ; and orator further charges, and here avers, that nothing whatever passed by said sale, and that the same was absolutely null and void for the further reason that at the time of said levy and sale under said execution the said property was in the actual possession, custody and control of said Gresham, under and by virtue of his purchase aforesaid at said mortgage sale." The bill prayed that the sheriff's deed to Molton be cancelled and annulled ; that the priority of complainant's execution over that in favor of said Molton be established ; and, in the event of a sale of the property to pay any part of the mortgage debt in favor of Gresham, and the payment into court of the proceeds of said sale, after satisfying said mortgage debt, that the priority of complainant's right therein be likewise established and declared.

The complainant subsequently, on April 22d, 1886, amended his bill by adding as parties defendant Geo. F. Moore, Mary W. Molton, Thomas J. Molton, and the said Shemei Gresham. This amended bill (which the view of the case taken by the court renders it unnecessary to notice with particularity) averred, among other things, that on the 23d October, 1884, the said Mrs. A. A. Ware, Marshall H. Molton, Mrs. Mary W.

Molton, and her husband, Thomas J. Molton, made an agreement, by which it was stipulated that, in the proceeds which might be left, after the payment of the balance due to said Gresham, whenever it was finally ascertained by the Chancery Court, said Marshall H. Molton should have 52½ per cent., and that said Mary Molton should have 47½ per cent. In said agreement the judgment of said Molton against Mrs. Ware is recited; the revivor thereof, and the issue of execution thereon; the levy and sale of the house and lot and its purchase by Marshall H. Molton; that Mrs. Ware had appealed to the Supreme Court to set aside said revived judgment; and reciting further that Mrs. Ware, on the 24th June, 1884, had conveyed the said house and lot to Mrs. Mary W. Molton; and that the agreement was designed as a settlement of the various matters without further litigation. It was also further agreed that the suit against Gresham should proceed to final determination, and the proceeds remaining, after the satisfaction of Gresham's debt, were to be distributed as above stated. The said deed to Mary W. Molton, and the above agreement, are prayed to be declared fraudulent and void as to complainant; and that the lien of complainant's execution be declared to be prior and superior thereto.

Upon final hearing, upon pleadings and testimony, the chancellor was of opinion that the complainant was not entitled to the relief prayed, and caused a decree to be entered dismissing his bill. This decree is here assigned as error.

JOHN GINDRAT WINTER, and WATTS & SON, for appellant.

TROY, TOMPKINS & LONDON, and GEO. F. MOORE, *contra.*

CLOPTON, J.—Although by our rulings, the estate vests, at law, in the mortgagee freed from the condition annexed to the mortgage, after the law-day and default in performance, an equity of redemption still remains in the mortgagor. While a foreclosure under a power of sale contained in a mortgage as effectually cuts off the equity of redemption, as would a decree in a court of equity, leaving nothing in the mortgagor but a statutory right of redemption, when the mortgagee purchases at his own sale, he arms the mortgagor with an option, if seasonably expressed, to disaffirm the sale, without reference to its fairness, or the adequacy of the price.—*Garland v. Watson,* 74 Ala. 323. Mrs. Ware expressed her election to disaffirm the sale made in October, 1881, by the mortgagee, at which he himself became the purchaser, by filing her bill, within a few months thereafter, to have it set aside, and to be permitted to redeem. Until the avoidance of the sale, the equity

[Gassenheimer, Adm'r, v. Molton et al.]

of redemption may be regarded as in abeyance; but the decree of the chancellor, rendered in August, 1883, declaring it void, and letting her in to redeem, related back to the time of the sale, and operated to place the equity of redemption in *statu quo*—to preserve a continuous entirety, unbroken and uninterrupted. On being declared void and vacated, the sale was without effect on the prior and existing equity or interests of the mortgagor.

The decree was in full force and effect, not having been superseded, in October, 1884, when the mortgaged property was sold under the exection in favor of Marshall Molton, and bought by him, and has so continued ever since. But it is contended, that as the law-day of the mortgage had passed, and the mortgagee was in possession at the time of the levy and sale, the equity of redemption was not subject to levy and sale under execution at law,—that under the statute, there can be no valid levy and sale after the law-day unless the mortgagor remains in the actual possession. The statute provides: "executions may be levied on an equity of redemption in either land or personal property. When any interest less than the absolute title is sold the purchaser is subrogated to all the rights of the defendant, and subject to all his disabilities." Prior to and independent of the statute, the mortgagor's possessory interest in personal property, when a certain ascertained possession for a definite period, could be sold under execution, and when sold, carried with it, the equity of redemption. Also when the mortgage conveyed lands, but the right of possession until default or some future definite period was reserved to the mortgagor, he had a valuable legal estate, which was subject to levy and sale under execution, and the purchaser acquired such legal title as will support ejectment.—*Hawkins v. May*, 12 Ala. 673; *Harbinson v. Harrell*, 19 Ala. 753; *Bernstein v. Humes*, 71 Ala. 260. The statute is not merely declaratory of these pre-existing rules. Its evident purpose is to subject to levy and sale a title or claim which would not otherwise be subject. We must therefore, give a field of operation other than when the mortgagor is in possession by right of possession. Prior to the statute, when the possession of the mortgagor was merely *permissive*, either before or after the law-day, he had no such interest as was subject to levy and sale under execution. Only in a court of equity, could judgment creditors redeem, or compel a foreclosure of the mortgage, in order to subject to the payment of their judgments whatever surplus may remain after its satisfaction. The previous statute expressly declared, that the equitable title or claim to land should be liable to the payment of debts by suits in chancery, and not otherwise. To avoid the delay and expense of a suit in equity, the statute in-

[Gassenheimer, Adm'r, v. Molton et al.]

terposes, and subjects the equity of redemption to levy and sale under execution, and subrogates the purchaser to all the rights of the mortgagor.—*Thompson v. Thornton*, 21 Ala. 808 ; *Lovelace v. Webb*, 62 Ala. 271. In *McConeghy v. McCaw*, 31 Ala. 447, it was held, that the interest of the maker of an absolute bill of sale to a slave; but intended as security for a debt, is an equity of redemption, coming within the letter of the statute, and can be sold under execution against him. The holder of the bill of sale was in possession, entitled to the slave's services for the use of his money. But it is said, that the sheriff's sale was before the law-day. Such fact does not appear in the report of the case, and is not stated, nor is any stress placed on it in the opinion; and if the fact is conceded, the principle of the decision is, that the equity of redemption may be levied on and sold, notwithstanding the mortgagor is not in possession. The statute uses the general term, the *equity of redemption*, unqualified by possession or otherwise—the right of the mortgagor before the law-day, to defeat the passing of the absolute estate to the mortgagee by performance of the condition of defeasance, and the right created by equity after the law-day, to call for a reconveyance by payment of the principal, interest, and costs, if any, without reference to the possession, whether in the mortgagee or mortgagor. Each comes within the letter of the statute, and there can be no sufficient reason, why either should be regarded as without its spirit. Any other construction would render the statute nugatory by leaving no field of operation. We, therefore, hold that Mrs. Ware had an equity of redemption, which could be sold under execution against her, at the time the property was levied on and sold.

The levy having been made on the land, without being limited to the interest of the mortgagor, it is further contended, that if the equity of redemption is subject to levy and sale, it should have been levied on *eo nomine*, and that a levy on the land does not operate to pass to the purchaser the equity of redemption. Such is the ruling in Connecticut, but founded, as it seems, on the construction of statutory provisions. In Maine and Massachusetts it has been held, that the creditor may extend his execution upon the whole estate, and such levy will pass the interest of the debtor, whatever it may be.—*Littlefield v. Cudworth*, 15 Pick. 23; *Brown v. Clifford*, 38 Me. 210 ; Freeman on Ex'ts. § 382. In *Lovelace v. Webb*, *supra*, cited and relied on by counsel, the levy was on the *land*. After referring to the purpose of the statute to benefit the mortgagor and his judgment creditors, it is said : "When the sale is made, however, it is of the equity of redemption, of no other or greater interest, and the statute in words expresses the legal consequence—the purchaser *is subrogated to all the rights and*

*subject to the disabilities* of the mortgagor." No question arose as to the character of the levy, but the right of the purchaser to redeem from the mortgagee is maintained, which could only have been done on the principle that by the levy, sale and purchase, he acquired the equity of redemption. Under our statutes the execution creditor has the election to restrict the levy to the equity of redemption, or to levy on the land. If restricted, the purchaser acquires no greater interest, than specially defined in the levy. He is estopped to dispute the validity of the incumbrance ; and if in fact there is no mortgage, though supposed and believed, there is no equity of redemption, and no interest passes by the levy and sale ; he can not take the entire estate unincumbered. But if he desires to contest the validity of the incumbrance, because it has been removed by payment and satisfaction, or otherwise, or because fraudulent, or on any other sufficient ground, he may cause his execution to be levied on the land, and a sale thereunder, will pass whatever interest the defendant may have—the equity of redemption, if there be a valid existing mortgage, the purchaser being subrogated to the rights of the mortgagor. The purchaser acquires all the estate of the defendant in execution, legal or equitable, subject to levy and sale ; the greater includes the less. The statutes were not intended to put the creditor to his election. Whether the sheriff's deed, purporting to convey "all the legal right, title, and interest and claim" of Mrs. Ware, operates to convey the equity of redemption, is immaterial. Molton, the purchaser, acquired an equity, which being prior in point of time, is superior to the equity of complainant.

It is not shown, that there was any connection between the purchase of the equity of redemption, and the subsequent arrangement with Mrs. Molton. They are independent of each other. No fraud is alleged or proved. Marshall Molton, having obtained the equity of redemption by a valid purchase, could make such disposition of it as he might deem proper, free from question by the creditors of Mrs. Ware, whose rights were not offended. He could have given it to Mrs. Molton if he chose, or used a part of the proceeds to compromise a claim to the property set up on her part, whether or not well founded, and to induce Mrs. Ware to prosecute her bill to settle the accounts between the mortgagee and herself as mortgagor seeking to redeem.—*Micou v. National Bank*, 104 U. S. 530.

Affirmed.