# Harrison *v.* Parmer.

### *Statutory Action, in nature of Ejectment.*

1. *Legal titles only available.*—In a statutory action in the nature of ejectment, the legal title must prevail against an equitable title, no matter how perfect the equity may be.

2. *As between lessor and lessee, whose title will prevail.*—If the defendant entered under an executory agreement for a lease, he has no legal title which will defeat the plaintiff's recovery, though he may maintain an action at law for damages, or a bill in equity for specific perform-

[Harrison v. Parmer.]

ance; but, if he entered under an executed lease, and the term has not expired, he may successfully defend the plaintiff's action.

3. *Whether contract is lease, or executory agreement for lease.*—A writing having been drawn up and signed by both parties at their first interview, duly attested, describing the premises to be let, the commencement and duration of the term, and the annual rent to be paid, this is sufficient to satisfy the requisitions of the statute of frauds (Code, §§ 2121, 2145), and to make a binding contract; but the addition of these words, "Notes and papers to be drawn up as soon as convenient," shows that the parties considered the transaction as incomplete, and the writing is only an executory agreement for a lease.

4. *Same.*—A writing having been drawn up at the second interview between the parties, which specified particularly the duties and obligations of the lessee, was signed by him, and delivered, with his notes for the rent as specified, to the lessor, who thereupon surrendered to him the original writing; this, without more, would amount to an executed lease, and the lessor would be held to have waived any stipulations not contained in the writing. But, it being further shown that the parties separated with the understanding that they were to meet a third time, when a duplicate of the writing signed by the lessee was to be prepared and signed by the lessor, and the first writing was to be then surrendered by the lessee, and that this was not done at the third meeting; these facts show that the parties considered the transaction as still incomplete, and the writings operate only as an executory agreement for a lease.

5. *Error without injury in rulings on evidence.*—Where the uncontroverted facts clearly establish the plaintiff's right to recover, erroneous rulings on evidence adverse to the defendant, which would not vary the result, are error without injury.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JNO. P. HUBBARD.

This action was brought by John T. Parmer against William M. Harrison, to recover the possession of a plantation, which was described in the complaint as the "Old Calloway place;" and was commenced on the 28th January, 1884. The defendant pleaded "not guilty, in short by consent;" and the cause was tried on issue joined on that plea.

On the trial, as appears from the bill of exceptions, it was shown that the defendant claimed and held possession of the lands sued for, under a contract made between him and the plaintiff, which the defendant insisted was a lease for five years, while the plaintiff contended that it was only an executory agreement for a lease, which had never been consummated. At the first interview between the parties, on the 9th August, 1883, a writing was drawn up for them by E. R. King, which was, as King testified, in these words: "Agreement between Mr. John T. Parmer and William M. Harrison, colored. The said Parmer agrees to rent or lease his Calloway place (that portion purchased by him of Dan. Flinn) to Wm. M. Harrison, for five years, at $300 per year, payable annually, from January 1st, 1884; notes and papers to be drawn up as soon as convenient;" and this was signed by both of them, Harrison only making his mark, and attested by said E. R. King.

[Harrison v. Parmer.]

At the second interview between them, in September, or October, 1883, said King wrote five notes for the annual rent as agreed, which were signed by said Harrison, by mark only, and delivered to said Parmer; and he drew up another instrument of writing, in these words: "Agreement between John T. Parmer and W. M. Harrison, colored. The said John T. Parmer agrees to lease his place known as the 'Old Calloway place' (the portion of said place I purchased of Daniel Flinn), for five years from the 1st day of January, 1884, at $300 a year; the rent to be paid annually; the first note due October 15th, 1884," &c., describing the others. "The said W. M. Harrison agrees to take good care of the place, and, at the expiration of five years, to turn the place back to said Parmer, in the same condition it was when he took possession. In case the said W. M. Harrison fails to pay his rent annually, the lease expires. In witness whereof, I have hereunto set my hand and seal, this *August 9th, 1883.*" This writing was signed by said Harrison, by mark only, and was attested by said King; and annexed to it were two memoranda, or stipulations, to the effect that Harrison was to have the control of the gin, that the other "renters" were to be allowed to gin their cotton free, and that one room in the house was reserved by Parmer for his own use; but these memoranda were signed only by said King, and not by the parties. This writing, and Harrison's five notes for the rent, were delivered to Parmer, and the original writing, signed by both parties, was then delivered to said Harrison; and the parties then separated, as King testified, with the understanding that they were to meet again, "for the purpose of drawing up a duplicate of said paper signed by Harrison, to be given to him, and the original writing was to be kept by him until the duplicate could be drawn up for him."

A third meeting was held between the parties, on the night of December 31st, when, as King testified, "plaintiff told defendant that he must give up said original paper, signed by both parties, before he would give defendant a lease;" that defendant thereupon sent for the paper, and delivered it up to plaintiff; and King having then furnished a duplicate of the writing signed by defendant alone, it was delivered to the defendant, and the interview terminated. The original writing, signed by both parties, was afterwards destroyed by plaintiff; and its contents, as above copied, were stated by King from memory. In October, or November, after the second interview, the defendant entered into possession under the contract, and continued in possession up to the bringing of the suit. On the 1st January, 1884, or a few days afterwards, plaintiff made a written demand of possession, claiming that there was no valid lease, and offered to surrender the defendant's notes;

[Harrison v. Parmer.]

and his demand not being complied with, he brought this suit.

Plaintiff, testifying as a witness for himself, stated that there were several stipulations, or reservations on his part, which were not expressed in the second writing drawn up by King, to which defendant's name was signed; that he objected to said writing, on that account, at said second interview, and that King said he did not then have time to change it, but it would be all right. This evidence was admitted by the court, against the defendant's objections, and he duly excepted. King, testifying as a witness for defendant, stated that, according to his recollection, nothing was said about any stipulations omitted from the writing, until at the third interview between the parties; and that the second writing was dated August 9th, the date of the original agreement signed by both parties, "because they were one transaction." On all the evidence, the substance of which is above stated, the court charged the jury, at the request of the 'plaintiff, that they must find for him, if they believed the evidence; to which charge the defendant excepted.

The charge of the court, and its rulings on the evidence, are now assigned as error.

SHAVER & HUTCHESON, for appellant.—(1.) The original writing, which was signed by both parties, and the second writing, signed only by Harrison, are to be construed as parts of one transaction, and, according to the testimony of King, were so understood by the parties; and being thus construed, they take the case out of the statute of frauds.—*Thayer v. Luce & Fuller*, 22 Ohio St. 74. It was unnecessary that plaintiff should sign the second writing, which contained no stipulations on his part; and the execution of that writing by the defendant, with the delivery and acceptance of his notes for the rent, fullfilled the intention of the parties, as expressed in the first writing, "notes and papers to be drawn up as soon as convenient." If, on the face of the papers, the intention of the parties was doubtful, their subsequent conduct, in giving and taking possession, shows that they considered the contract executed.—Chitty on Contracts, 313, 6th Amer. ed.; *Danforth v. Laney*, 28 Ala. 274. (2.) But the first writing, signed by both parties, was in itself a lease, operating a present demise. Chitty on Contracts, 314–15; Taylor's Landlord & Tenant, 41–43, 6th ed.; *Pearson v. Rice*, 8 Bing. 182; *Poole v. Bentley*, 12 East, 168. (3.) The destruction of this paper by plaintiff, after he had obtained possession of it under the circumstances shown by the testimony, did not annul the contract, nor affect the defendant's rights under it. (4.) The rulings of the court on the evidence were erroneous.—Taylor's L. & T., 44.

VOL. LXXVI.

[Harrison v. Parmer.]

TROY & TOMPKINS, *contra*, cited *Jackson v. Myers*, 3 John. 388; Taylor's Landlord & Tenant, §§ 37–42.

STONE, C. J.—This is a statutory real action, brought by the appellee, Parmer. In such action, only legal titles can be looked to. No matter how complete an equity may be shown, it will neither maintain the action, nor defeat it, against a claimant under a legal title. Only a court of chancery can recognize and enforce equitable claims to lands.— *Yon v. Flinn*, 34 Ala. 409; *Tutwiler v. Munford*, 73 Ala. 308; *Slaughter v. McBride*, 69 Ala. 510.

The defendant derived all the claim he asserts from the plaintiff. He went into possession under an alleged contract of letting, which he claims secures to him a lease-hold term of five years duration, commencing on January 1st, 1884. The writings and all the testimony show this to have been the relation of the parties. This is conclusive of plaintiff's right to recover, unless defendant can show a paramount legal title which dominates it.—*Bishop v. Salouette*, 67 Ala. 197; *Houston v. Farris*, 71 Ala. 570; *Otis v. McMillan*, 70 Ala. 46.

The inquiry in this case is, whether there was a lease, or only an executory agreement for a lease. If the former, then plaintiff has no right to recover in this action. If the latter, then defendant can not defend this suit, but will be left to his action for damages, or to a bill for specific performance, if he complies with the terms of the contract on his part. Parmer can not invoke the statute of frauds, as a defense to any attempt to charge him, no matter whether the writing be treated as an executed lease, or merely as an executory agreement. He admits the paper was signed by him, and it has one attesting witness.—Code of 1876, § 2145; *Heflin v. Milton*, 69 Ala. 354; *Phillips v. Adams*, 70 Ala. 373; *Cooper v. Hornsby*, 71 Ala. 62; Browne Stat. Frauds, § 397.

The parties to this suit had three interviews in reference to the alleged lease. At the first two of those interviews, the witness King was alone present. At the first meeting, in August, 1883, an agreement was drawn up, signed by both parties, and witnessed by King. This agreement described the premises to be let, the commencement and duration of the leasehold term, and the annual rent to be paid. It was not an executed lease at that time, for it contains the clause, "Notes and papers to be drawn up as soon as convenient." This paper was left with Parmer until the second interview, and during that time the contracting parties took no action under the agreement. The second interview was late in September, or early in October. At that time a paper was drawn up, specifying particularly the duties and obligations to be incurred by Harrison, the

11

proposed tenant. This paper was signed by Harrison only, witnessed by King, and both it and Harrison's notes for rent were delivered to, and received by Parmer. Parmer then surrendered the agreement first entered into, and it was handed to Harrison, who retained it until December 31st—the time of the third interview. The testimony of King is, that after Harrison executed the notes and the paper at the second interview, "the plaintiff [Parmer] took the said five notes, and also the said instrument then drawn up and signed by Harrison alone, and plaintiff gave up the original paper signed by both plaintiff and defendant, and said original paper was given to defendant; that he, King, did not have time, at that meeting, to draw up for Harrison a duplicate of the paper drawn up and handed to Parmer; and that the original paper, executed August 9th, was handed to Harrison, to be kept until the duplicate could be drawn up for him; and it was understood they (the witness, plaintiff and defendant) were to meet again, for the purpose of drawing up a duplicate of said paper, to be given to Harrison." Plaintiff testified as a witness, that he received said notes and said paper signed by Harrison; that he then gave up the original contract signed by him and Harrison, and that Harrison took the same. He testified that, when he did this, he insisted that certain named stipulations and reservations should be put in the contract, which were not put in; but, in this, he was contradicted by King and by Harrison. He, Parmer, offered no explanation of his conduct, in receiving and carrying off the notes and contract signed by Harrison alone. True, the notes were signed by defendant's mark, and have no witness. The agreement, however, accurately describes the notes, and that was both signed by Harrison, and witnessed.

If this transaction had closed with the acts done at the second meeting, there can be no question it would have been an executed lease,—not a mere agreement to give a lease. The instrument signed by both parties, and then delivered to defendant, was so executed by Parmer, the party sought to be charged in this suit, as to be binding on him under the statute of frauds. Code, § 2145; Bro. Stat. Frauds, § 397. That instrument described the premises and the parties, and specified the rent reserved, and the commencement and duration of the lease. The second paper, and the notes executed by Harrison at the second interview, would fill the requirement in the original agreement, "Notes and papers to be drawn up as soon as convenient." The original agreement being delivered to Harrison, in the presence of Parmer, and without his dissent, these writings evidenced every element of an executed contract of lease. If, as Parmer contends, certain stipulations and reservations were omitted from the writing, he must be held to have waived

[Wilkinson v. Williamson.]

them, when he accepted Harrison's notes and obligation, which made no mention of them. Such is the fate of all oral negotiations, not carried into the written contract afterwards executed and accepted.—*Pettus v. McKinney*, 74 Ala. 108.

What occurred, however, at the second interview, shows that the parties did not then consider the transaction closed. They were to have a third meeting. The expressed purpose of that third meeting was, that a duplicate, or counterpart of the paper executed by Harrison alone, was to be prepared and given to him; and when so prepared and delivered, Harrison was to surrender the original joint agreement. Now, this agreed duplicate, or counterpart—the original agreement being surrendered up—would be incomplete and worthless, without the attested signature of Parmer, the plaintiff. Neither the parties, nor King, the draughtsman, considered the writings complete; and hence we must hold there was not a compliance with the stipulation in the original agreement, that the *notes and papers were to be drawn up as soon as convenient*. We feel constrained to hold there was only an agreement for a lease, which can only become a legal holding, by a lease executed, or a bill for a specific performance.—Taylor, Landlord & Tenant, § 40; *Doe v. Ashburner*, 5 T. R. 163; *Goodtitle v. Way*, 1 T. R. 735; *Doe v. Clare*, 2 T. R. 739; *Doe v. Smith*, 6 East, 530; *Weld v. Traip*, 14 Gray, 330.

Some testimony given by plaintiff, of conversations preceding the first writing, may have been illegal. It could not, however, vary the result of the trial. Under no circumstances, according to the rules above declared, can the defendant resist a recovery in this suit.

Affirmed.