# Marks *v.* Robinson & Ledyard.

### *Trover for Conversion of Bales of Cotton.*

1. *Respective rights and titles of mortgagor and mortgagee*—The mortgagor in possession, while the mortgage debt is unpaid, whether before or after default, is the general owner of the freehold (or property), having the legal title; while the mortgagee, and those claiming in his right, have, as against the mortgagor and all claiming in his right, all the attributes of a legal title necessary to recover and hold the property. (Explaining and limiting *Childress v Monette*, 54 Ala 317, and *Atcheson v. Broadhead*, 56 Ala. 414.)

2. *When trover lies; outstanding title in third person.*—To maintain an action of trover, the plaintiff must prove property in himself, general or special, and a right to the immediate possession; and the defendant may, generally, defeat the action by showing that the legal title is in a third person, without connecting himself with it.

3. *Same, as between mortgagor and mortgagee and their privies.*—In an action by the mortgagee of personal property, against a subsequent purchaser from the mortgagor, or one who has succeeded only to his right and title, the defendant can not set up an outstanding title in a third person, such as an older mortgage, with which he does not connect himself.

4. *Application of payments.*—When an account is composed of several items, bearing different dates, but all due, and a partial payment is made without direction by the debtor as to its application, and without actual application by the creditor, the law applies it to the several items in the order in which they were contracted, beginning with the oldest.

5. *Mortgage of unplanted crop.*—A mortgage of an unplanted crop, though it conveys no legal title, is a valid executory contract as between the parties, and conveys an equity; and when consummated by delivery of the property, the legal title becomes vested in the mortgagee.

6. *Charge on oral testimony.*—When the record shows that certain facts were clearly proved, and were not controverted, the court may charge on them without hypothesis; but, if there is any conflict in the evidence, or it is at all indeterminate, such a charge is an invasion of the province of the jury.

7. *When trover lies against factor or commission merchant.*—A factor, or commission-merchant, receiving and selling cotton for a mortgagor, without actual notice of the mortgage, is liable in trover to the mortgagee, if the mortgage has been properly recorded in the county in which the cotton was raised.

8. *Charge raising immaterial inquiry.*—A charge asked, which raises an immaterial inquiry, and is based on evidence which is immaterial, is properly refused, even though it may assert a correct legal proposition.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by Robinson & Ledyard, suing as partners, against Spencer C. Marks, to recover damages for the conversion of fourteen bales of cotton; and was commenced on the 5th June, 1885. The record does not show what pleas were filed, but a trial was had on issue joined, which resulted in a verdict and judgment for the plaintiffs, for $708.40. The cotton was raised during the year 1882, by J. P. Caffey, on a plantation in Lowndes county, which he had bought from one Murray; was brought by him, "in October, 1882," to the city of Montgomery, and stored in the warehouse of Marks & Fitzpatrick, of which firm the defendant was a member; and was sold for him, on his request, by the defendant, within two hours after it was stored in the warehouse, and the proceeds of sale, less commissions and charges, paid over to him. The plaintiffs claimed the cotton under a mortgage for advances to make a crop, executed to them by said J. P. Caffey, which was dated June 9th, 1882, recited advances made to the amount of $650, and conveyed "the entire crop of cotton and corn which may be produced on said plantation during the present year," as security for said advances, "and for all future indebtedness and advances made to me [him] by said Robinson & Ledyard."

On the trial, as the bill of exceptions shows, the plaintiffs offered this mortgage in evidence, appended to which was a certificate of acknowledgment, in statutory form, before a justice of the peace, on the 13th June, 1882, and also a memorandum signed by the judge of probate, in these words: "Received this 19th day of June, A. D. 1882, and recorded in vol. 3 E, pages 48–9–50." The defendant objected to the admission of said mortgage as evidence, "because the indorsement thereon did not amount to the certificate required by law to show that said mortgage had been recorded in the

office of said judge of probate, nor when it was received for
record and recorded;" and he duly excepted to the over-
ruling of his objection.   The plaintiffs proved, also, that a
large balance, exceeding $2,000, was still due them for ad-
vances made under said mortgage; that the cotton in con-
troversy "was raised by said Caffey, during the year 1882,
on said Murray place, with hands (laborers) some of whom
worked on shares (for one-half of the crop), Caffey furnish-
ing the lands and teams, and advancing to said hands, while
others worked for wages;" also, the receipt and sale of the
cotton by the defendant, for Caffey, the payment of the
money to him, and the value of the cotton.   "On cross-
examination of one of the plaintiffs, the defendant brought
out the account hereafter mentioned, showing that plaintiffs
had received other cotton from said Caffey during the year
1882, and the same had been credited to his account with
them."   The material facts shown by this account are stated
in the opinion of the court, and it is unnecessary to repeat
them here.   "The plaintiffs then offered, in rebuttal, to in-
troduce in evidence another mortgage executed to them by
the defendant," which was dated March 4th, 1882, conveyed
" the entire crop of cotton and corn, and other produce,
which may be produced on said plantation the present
year," and purported to be given for advances made to the
amount of $1,000, "and for all future indebtedness and ad-
vances made to me [him] by said Robinson & Ledyard;"
the law-day being October 1st, 1882.   Indorsed on this mort-
gage was a certificate of its probate, in statutory form, made
by the judge of probate of Montgomery, dated March 4th,
and an indorsement by the judge of probate of Lowndes
county, in these words: "Received this 8th day of March,
1882, and recorded in vol. ZZ, pages 230–32."   The defend-
ant objected to the admission of this mortgage as evidence,
but without stating any ground of objection, and duly ex-
cepted to the overruling of his objection.   The defendant
then read in evidence to the jury, against the objection of
the plaintiffs, the conveyance of said plantation to Caffey
by Murray and wife, which was dated the 22d July, 1881,
and recited as its consideration the present payment of $10,
and the obligation of said Caffey to pay an outstanding debt
of $4,500, due to the estate of one Beasley, which was a lien
on the land; and a mortgage of even date with the convey-
ance, executed by Caffey to said Murray to secure the pay-
ment of his written obligation to deliver forty bales of
cotton on or before the 28th November, 1882, which con-
veyed the entire crop of cotton and corn raised on the

plantation during the year 1882, and was conditioned to be void on the payment of the debt to the estate of Beasley.

This being "substantially all the evidence," the court charged the jury, on the request of the plaintiffs, "that they must find for the plaintiffs, if they believed the evidence." The defendant excepted to this charge, and then requested the following charges in writing, duly reserving exceptions to the refusal of each:

"1. If Murray and wife conveyed to Caffey the land on which the cotton in question was raised, as shown by the deed in evidence, and Caffey, to secure the purchase-money in whole or in part, and as part of the same transaction, made the mortgage on the crop of cotton, as shown by his mortgage in evidence ; then the legal title to said cotton was not conveyed to complainants by their mortgage from Caffey, and they can not recover in this action.

"2. If complainants have been paid, from the proceeds of the mortgaged property, an amount equal to, or greater than, the advances made by them to Caffey after the execution of the mortgage of June, 1882, and prior to the sale of the cotton in question by Marks, then plaintiffs can not recover.

"3. The mortgage of Caffey to complainants, executed prior to the planting of the crop of cotton, conveyed no title to the cotton crop, and the recording of such mortgage was no notice of a lien on the cotton crop, and all proceeds of the cotton crop mortgaged in June must be applied, so far as the defendant is concerned, to the advance secured thereby, up to the sale of the cotton by Marks ; and if that debt was thereby paid, before the commencement of this suit, the complainants can not recover.

"4. Advances made by complainants after the sale of the cotton by Marks, are no lien on such cotton.

"5. If complainants were under no obligation by their contract to make future advances, then their mortgages are only good to the extent of actual amounts which they were bound to advance; and if they have been paid that, they are not entitled to recover.

"6. If the deed of Murray and wife to Caffey shows that Murray and wife occupied the place, and made the crop of 1881, and that Caffey, as part of the same transaction, to secure a debt due in the fall of 1882, mortgaged the crops to be made by him ; it is for the jury to say, under the circumstances, whether it was the crop of 1882 or 1881 that Caffey conveyed to Murray, and if the crop of 1882, then plaintiffs can not recover.

"7. If the crop raised by Caffey in 1882 was raised on

shares, one-half to be Caffey's, and one-half to be the laborers', then the legal title to one-half of the crop was in such laborers, and would not pass under plaintiffs' mortgage, and they can not recover the same in this form of action.

"8. It is the business of the plaintiff to make out his case, to the satisfaction of the jury; and if he fails to show what, or what portion he is entitled to recover, the jury should find for the defendant.

"9. A mortgage to secure a specified amount, and to secure all future indebtedness and advances, not specifying any amount to be advanced, nor any purpose for which advances were to be made, nor any time within which advances were to be made, and showing no obligation to make advances, nor any to receive them, is void as a mortgage to secure future advances, against persons dealing with the subject of the mortgage, without actual notice of such mortgage.

"10. If Murray and wife conveyed the land on which the cotton in question was raised, as shown by their deed in evidence, and Caffey, as part of the same transaction, conveyed the crops to be raised by him on the lands in 1882, to secure certain debts therein mentioned; then the two papers are to be construed as one; and the mortgage by Caffey will be regarded as a reservation by Murray and wife, and will vest the legal title of the crops in Murray and wife, or one of them, and the plaintiffs can not recover in this form of action.

"11. If the jury believe, from the evidence, that the defendant had no notice of the plaintiffs' title to the cotton in controversy, before he paid the proceeds of sale over to Caffey; then he is not liable in this action, notwithstanding the record of plaintiffs' mortgage in the county where the crop was grown.

"12. If the jury find, from the evidence, that the defendant did not authorize nor direct the sale of the cotton in controversy; then he is not liable in this action, although the facts might have authorized a recovery against Gayle, if he had been sued instead of Marks.

"13. The recording of the mortgage made before the planting of the cotton crop, is not notice under the registration laws.

"14. A mortgage to secure future advances, which the mortgagee is not bound to make, and the mortgagor is not bound to receive, is not operative as a mortgage, though recorded."

The refusal of these several charges, the charge given,

and the rulings on evidence to which exceptions were reserved, are now assigned as error.

GUNTER & BLAKEY, for appellant.— (1.) The plaintiffs, never having had possession of the cotton, can only recover on proof of a legal title in themselves; and the defendant may defeat their action by setting up the *jus tertii*, without connecting himself with it.—*Jones v. Sinclair*, 2 N. H. 319; 9 Johns. 362; *Hostler v. Skull*, 1 Amer. Dec. 583; *Leake v. Loveday*, 4 Man. & Gr. 973; *Kennedy v. Strong*, 14 Johns. 131; *Schermerhorn v. Van Valkenburgh*, 11 Johns. 529; *Rotan v. Fletcher*, 15 Johns. 207; *Aiken v. Buck*, 1 Wend. 466; 2 Greenl. Ev., § 648; 2 Saund. Pl. & Ev. 1166; *Sims v. Boynton*, 32 Ala. 353; *Dozier v. Joyce*, 8 Porter, 303; *Taylor v. Marshall*, 11 Ala. 458; *Lowremore v. Berry*, 19 Ala. 130; *McGuire v. Shelby*, 20 Ala. 456; *Foster v. Chamberlain*, 41 Ala. 165; *Miller v. Jones*, 26 Ala. 246; *Brown v. Beason*, 24 Ala. 466; *Hare v. Fuller*, 7 Ala. 717; *Reese v. Harris*, 27 Ala. 301; *Donnell v. Thompson*, 13 Ala. 440; *Cook v. Patterson*, 35 Ala. 102; 1 Smith's Lead. Cases, 8th ed., 692. (2.) The plaintiffs were, at most, only second mortgagees of the cotton; and they can not maintain trover for its conversion, never having had the possession.—*Ring v. Neale*, 114 Mass. 111, or 19 Amer. Rep. 316; *Landon v. Emmons*, 97 Mass. 37; *Rugg v. Barnes*, 2 Cush. 591; *Goodrich v. Willard*, 2 Gray, 203. (3.) The mortgage by Caffey to Murray, executed at the same time with the conveyance by Murray to Caffey, and as part of the same transaction, was a reservation by Murray of the legal title to the cotton.— *Booker v. Jones*, 55 Ala. 266; *Elmore v. Simon*, 67 Ala. 526. Nothing remaining in Caffey but the equity of redemption, he could convey nothing more by his mortgages to the plaintiff. *Childress v. Monette*, 54 Ala. 317; *Atcheson v. Broadhead*, 56 Ala. 414. (4.) The first mortgage to plaintiffs was executed before the crop was planted, and conveyed only an equity, which was never perfected by delivery of the cotton; and this was not a legal title.—*Rees v. Coats*, 65 Ala. 256; *Collier & Son v. Faulk & Martin*, 69 Ala. 59. Plaintiffs must recover, therefore, if at all, under their second mortgage, executed in June, 1882. (5.) This second mortgage ought not to have been admitted as evidence, because the memorandum indorsed on it was not a sufficient certificate within the requirements of the statute.—Code, § 2148. If properly recorded, so as to charge the defendant with knowledge or notice of its contents, it is only valid to the extent of the advances made and recited; as to any future advances, or future indebtedness, which might never be made or incurred,

[Marks v. Robinson & Ledyard.]

it can not affect the rights of the defendant.—*Collier v. Faulk & Martin*, 69 Ala. 59; *Lovelace v. Webb*, 62 Ala. 271; 50 Amer. Rep. 477. (6) If the plaintiffs showed any legal title whatever in themselves, sufficient to maintain this action, it was only for an undivided and unascertained portion or interest; the cotton having been raised on shares with the laborers, whose interest was not conveyed by Caffey's mortgages, and can not be recovered by plaintiffs; and the act of conversion, if any be shown, being entire and indivisible, a recovery could only be had by all the parties in interest, suing jointly as plaintiffs.— *Comer v. Sheehan*, 74 Ala. 452; 69 Ala. 1, 58, 218; 70 Ala. 434. (7.) But, on the facts in evidence, the defendant is not guilty of any tort, and is not liable in this form of action. It is admitted that he had no actual notice of the plaintiffs' mortgages, and the constructive notice arising from registration does not fix on him a liability for a tort, any more than a criminal responsibility for an act of which knowledge or notice is an essential ingredient. Registration of a conveyance of an equitable interest is not constructive notice.- *Bailey v. Timberlake*, 74 Ala. 221. The registration statutes were intended to protect subsequent purchasers from the grantor or mortgagor, and not to increase the criminal liability of persons acting in good faith. If the defendant had re-delivered the cotton to Caffey, or to any transferree of the warehouse receipt, before notice of plaintiffs' claim, he would not have been liable to plaintiffs, in either detinue or trover.— *Nelson v. Iverson*, 17 Ala. 216; 24 Ala. 1; 1 Dana, 122; *Parker v. Lombard*, 100 Mass. 145; *Roach v. Turk*, 9 Heisk. Tenn. 708, or 24 Amer. Rep. 360; *Spooner v. Holmes*, 102 Mass. 503; Bigelow on Torts, 441, 449; *Spooner v. Manchester*, 43 Amer. Rep. 514. The sale of the cotton, under the circumstances in evidence, was, in legal effect, but a transfer of the cotton to the purchaser, as the transferree of the warehouse receipt. The cotton remains *in specie*, and the plaintiffs can assert their legal rights against it. Moreover, Caffey had the right to sell the cotton, and to apply the proceeds to the payment of the older mortgage to Murray; and the record does not negative the fact that the money was so applied.

TROY, TOMPKINS & LONDON, *contra.*—(1.) That the defendant was guilty of a conversion of the cotton, under the facts in evidence, although he had no actual notice of the plaintiffs' mortgages, can not be doubted.- *Perkins v. Smith*, 1 Wils. 328; *Stephens v. Elwal*, 4 M. & S. 259; *Perminter v. Kelly*, 18 Ala. 716; *Doty v. Hawkins*, 6 N. H. 247; *Prince v.*

[Marks v. Robinson & Ledyard.]

*Puckett,* 12 Ala. 832 ; *Lee v. Matthews,* 10 Ala. 682 ; *Williams v. Merle,* 11 Wend. 80 ; *Hoffman v. Carow,* 22 Wend. 285. (2.) That the defendant was chargeable with notice of plaintiffs' mortgages, from their registration in Lowndes county, see *Mayer & Co. v. Taylor & Co.,* 69 Ala. 403 ; *Hurst & McWhorter v. Bell & Co.,* 72 Ala. 336 ; *Heflin & Phillips v. Slay,* 78 Ala. 180 ; *Smith v. Fields,* 79 Ala. 336. (3.) The record does not affirmatively show that the cotton was raised on the particular lands conveyed by Murray to Caffey, and covered by the mortgage to Murray ; and if these facts were shown, that mortgage shows on its face that the legal title was outstanding in Beasley's heirs, and therefore *Booker v. Jones,* 55 Ala. 266, has no application. But that case, it is insisted, is against the weight of the adjudged cases, and is not supported by the cases therein cited. Under the facts in evidence, the general principle applies to the Murray mortgage, that a mortgage of a crop not yet planted conveys only an equitable interest.—*Mayer & Co. v. Taylor & Co.,* 69 Ala. 403 ; *Moore v. Byrum,* 30 Amer. Rep. 58, note ; *McCaffrey v. Woodin,* 22 Amer. Rep. 644, note ; *Apperson v. Moore,* 21 Amer. Rep. 170 ; *Butt v. Ellett,* 19 Wall. 544 ; *Sellers v. Lester,* 48 Miss. 513 ; *Orcutt v. Moore,* 45 Amer. Rep. 278 ; 5 Pick. 522 ; 16 Vermont, 377 ; 9 Green. 12. (4.) Admitting that there was an outstanding legal title under the mortgage to Murray, the defendant does not connect himself with it, and can not set it up in this action. He acquired only the right and title of Caffey, who had conveyed to the plaintiffs a title which was legal against all the world except the prior mortgagee.—*Street v. McClerkin,* 77 Ala. 580; *Allen v. Kellam,* 69 Ala. 442 ; *Jones v. Reese,* 65 Ala. 134 ; *Lincoln v. Emerson,* 108 Mass. 87 ; *Wyckoff v. Gardner,* 45 Amer. Dec. 388, note : *Gilliam v. Bird,* 49 Amer. Dec. 379 ; *Gardner v. Booth,* 31 Ala. 186 ; *McCoy v. Gentry,* 73 Ala. 105 ; *Coyle v Wilkins,* 57 Ala. 108 ; Bigelow on Estoppel, 382 ; Herman on Estoppel, § 902 ; *Denby v. Mellgrew,* 58 Ala. 147. (5.) That a second mortgagee may maintain trover, even when his mortgage was executed after the law-day of the first, this court has expressly decided.—*Gardner v. Morrison,* 12 Ala. 547. (6.) The plaintiffs claimed the cotton under their second mortgage, which was executed in June, 1882 ; and they offered in evidence their first mortgage, executed in March, in rebuttal of the evidence as to their receipt of other cotton. That the cotton so received was properly appropriated in payment of the older debt, see *Johnson v. Thomas,* 77 Ala. 367 ; *Harrison & Robinson v. Johnston,* 27 Ala. 445. (7.) The record does not show that the laborers had or claimed any share or interest in this

particular cotton ; and if they had any interest, the defend-ant could not, under the authorities above cited (4), set up that outstanding title. (8.) Although the account between, Caffey and plaintiffs, brought out by defendant, showed ad-vances made after the converson, that fact was irrelevant; since, on the 1st October, 1882, the balance due plaintiffs was greater than their recovery in this case.

STONE, C. J. The present suit is an action of trover, and counts on an alleged tortious conversion of certain bales of cotton by Marks, the appellant, the property of the appellees. It is contended that, inasmuch as, to maintain trover, the plaintiff must show a legal right to the posses-sion, the plaintiffs, Robinson & Ledyard, can not recover in this case, because their claim is, at most, but an equity. This contention is rested on the alleged fact, that before the mortgage of the crop was executed to Robinson & Ledyard, Caffey, the mortgagor, had executed a prior mortgage to one Murray, on the same crop to be grown, which was duly and properly recorded ; that by this act he retained in himself only an equity, and that consequently he could and did con-vey to Robinson & Ledyard only an equitable title, not ca-pable of maintaining trover.

The effect of a mortgage is different from that of any other species of conveyance, in some particulars. It is treated differently in the two leading jurisdictions, equity and common law. In the former, it is but a security for money—an incident to the debt it secures, the debt being the principal. In the latter, it is, as between the parties, a transfer of the legal title, leaving in the mortgagor only a right to redeem, called in the books an equity of redemp-tion. The mortgagor in possession holds in subordination to the right and title of the mortgagee and his transferree; and the latter may dispossess him at any time, by action at law, unless by the terms of the mortgage possession is reserved in the mortgagor, for a term not expired. A mort-gagee in possession is, in a law forum, the legal owner, hold-ing possession under a legal title. His holding is adverse to the mortgagor, and, if acquiesced in for the period of limitations for actions at law, it bars the mortgagor of all relief, legal and equitable. As to all persons, however, who can not connect themselves with the title of the mortgagee, the mortgagor in possession is the owner of the legal title ; and, under such title, he can both maintain and defend an action of ejectment. And as to all rights and privileges, both civil and political, of which the ownership of a free-hold is one of the conditions, the mortgagor is a free-holder,

while the mortgagee, by the mere virtue of his mortgage title, can not claim to be such.—1 Jones on Mort., §§ 11 to 16, inclusive ; *Denby v. Mellgrew,* 58 Ala. 147 ; *Allen v. Kellam,* 69 Ala. 442. Possibly, the principle may be briefly stated as follows : The mortgagor in possession, whether before or after forfeiture, is the general owner of the freehold, having the legal title ; while the mortgagee, and those claiming in his right, whether the title be abstractly good or not, have, as against the mortgagor and all claiming in his right, all the attributes of a legal title, necessary to recover and hold the property mortgaged. We are speaking of the *status* of the parties before extinguishment of the mortgage lien. In these principles and their application, there is no material distinction between a mortgage of real and a mortgage of personal property, while the mortgage debts remains unpaid. In this State, payment of the mortgage debt destroys the mortgagee's title to personal property ; while, in the absence of statute, it does not, without more, annul his title to realty.

On the question we have been considering, the case of *Gardner v. Morrison,* 12 Ala. 547, is not distinguishable from this. We have no wish to overrule or impair the authority of that case, which simply declares a rule of practice. We hold, that the title conveyed to Robinson & Ledyard vested in them a title which will maintain trover against any one except Murray, and those claiming in his right.—*Allen v. Kellam,* 69 Ala. 442.

The cases of *Childress v. Monette,* 54 Ala. 317, and *Atcheson v. Broadhead,* 56 Ala. 414, contain expressions which can not be reconciled with what is said above. Neither of those cases presented the question as it is raised by this record. In the first, *Childress v. Monette,* the land had been conveyed by trust deed, containing a power of sale, and appointing a trustee to excute the trust. The lands, having been duly advertised, were sold in May, 1868, by the trustee ; and Childress, the beneficiary, became the purchaser, received a deed, went into possession, and retained it until February, 1869, or 1870. The proceedings were regular, and no imperfection is noted in the chain of title under which Childress claimed. The title of Monette was as follows : Under a judgment against Brown, the mortgagor, the mortgaged lands were levied on and sold, and Tunstall became the purchaser, receiving a conveyance. Tunstall conveyed to Monette, who, by some means not shown, obtained peaceable possession, and the action—ejectment—was brought by Childress to dispossess him. Childress had the title of the mortgagee, while Monette had only the title of the mort-

gagor. Under all the authorities, the title of the mortgagee will dominate that of the mortgagor, in any contest between them, or their privies in estate. So, the title of Monette, being only the title of Brown, the mortgagor, was only an equity as against Childress, armed as the latter was with the title of the mortgagee. That was the question raised by the record, and the ruling was correct. If the language of the opinion took a wider range, and asserted that the title of the mortgagor is only an equitable title, even before foreclosure, and as against outsiders, it is not supported by the authorities, but was expressly departed from in *Denby v. Mellgrew*, 58 Ala. 147, and *Allen v. Kellam*, 69 Ala. 442. The point raised was correctly decided, and any thing said beyond that can not be regarded as authority against the latter rulings.

So, in the later case of *Atcheson v. Broadhead*, 56 Ala. 414, the contest was between the mortgagor's title, and that of a transferree from the mortgagee. No authority, save that of *Childress v. Monette*, was cited in support of it, and the comments made on that case are applicable to this later ruling. Neither of them, in the point *actually decided*, antagonizes the anomalous peculiarity of a mortgagor's title — only an equity as against the mortgagee and his privies; a legal title against all others. Marks, the appellant in this case, does not connect himself with Murrary, the older mortgagee. He acted as the agent of Caffey, the mortgagor, and can defend alone on his title. Having mortgaged the cotton to Robinson & Ledyard, Caffey thereby clothed them with a legal right to the possession, against himself and all others claiming in his right.

It is not intended, in what is said above, to controvert the doctrine, that a title merely and simply equitable will not support trover, or any other action for a direct injury to property; nor can one, seized of a title simply equitable, transfer to another a better title than he holds.—*You v. Flinn*, 34 Ala. 409; 2 Brick. Dig. 484; *Harrison v. Parmer*, 76 Ala. 157. But parties may so fetter or pledge their property to others, or so place themselves under disabilities, as to authorize a suit against them by one who is, abstractly, without title. The relation of a tenant to his landlord is a familiar illustration of this principle.—*Farris v. McCurdy*, 74 Ala. 162. Nor do we deny that, when there is nothing in the relation of the parties to prevent it, it is a good defense to the action of trover, that the plaintiff has no title to the property sued for. It is necessary to the maintenance of the action, that the plaintiff proves property in himself, general or special, and a right to immediate pos-

session; and disproof of this by the defendant is not only, as a general rule, admissible, but it defeats the action. It may generally be proved by showing title in a stranger; called the *us tertii.*—*Dermott v. Wallack*, 1 Black, (U. S.) 96; *Dickinson v. Lovell*, 35 N. H. 9; *Leake v. Loveday*, 4 M. & Gr. 972.

When, however, as in this case, the suit is by the mortgagee, against one who has only the title and authority of the mortgagor, conferred after the mortgage was executed, the rule is different. He can not defend on the outstanding title of a stranger, unless he connects himself with such outstanding title.—*Denby v. Melgrew*, 58 Ala. 147; *Scott v. Ware*, 65 Ala. 174; *Allen v. Kellam*, 69 Ala. 442; *Comer v. Sheehan*, 74 Ala. 452; *Folmer v. Copeland*, 57 Ala. 588; *Gafford v. Stearns*, 51 Ala. 434; *Street v. McClerkin*, 77 Ala. 580; *Gantt v. Cowan*, 27 Ala. 582; *Garrett v. Lyle, ib.* 586; *Burrows v. Waddell*, 52 Iowa, 195; *Harker v. Danent*, 52 Amer. Dec. 670; 6 Wait Ac. & Def. 140–1.

Two other principles of law may be here stated, as bearing on the determination of this case.

*First:* If there be an account composed of several items, bearing different dates, all due, and a partial payment is made without direction as to its application, or, in case of failure to make the application by the payor, without actual application by the payee, the law will apply such partial payment to the older of the items, in the order in which they were contracted.—2 Greenl. Ev. § 533; *Bradley v. Murray*, 66 Ala. 269.

*Second:* A mortgage of an unplanted crop conveys no legal title to the mortgagee. It does, however, convey an equity. And if, after said crop is grown, it is delivered to the mortgagee, in pursuance of the mortgage, this clothes the mortgagee with the legal title and right to the possession, which will prevail over the right of any third person, acquired from the mortgagor after such delivery. And to have such effect, it is immaterial whether such mortgage is regularly recorded, or even recorded at all. It is, before delivery, a valid executory contract to sell and buy, as between mortgagor and mortgagee; and when consummated by delivery, the legal title becomes thereby vested in the mortgagee.—*R es v. Coats*, 65 Ala. 259, and many authorities cited; *Collier v. Faulk*, 69 Ala. 58; *Hurst v. Bell*, 72 Ala. 336; *Thompson v. Powell*, 77 Ala. 391; *Mayer v. Taylor*, 69 Ala. 403.

The bill of exceptions informs us, that the act of sale, which is relied on as a conversion in this case, took place in October, 1882, but does not inform us on what day it

took place. There is in it an itemized copy, debit and credit, of Caffey's account with Robinson & Ledyard, giving date of each item. No question is raised as to its correctness. Caffey's crop lien and mortgage first given to Robinson & Ledyard, bears date March 4, 1882, presumably before the crop was planted. This mortgage stipulates security on the crop and other named property, for one thousand dollars advances, and other advances they might make to him. Before June 9, 1882, they had advanced to him to the extent of fourteen hundred dollars. On June 9, 1882, Caffey executed to them another crop lien and mortgage on the crop, to secure another six hundred dollars, and any further advances they might make to him. Each of these mortgages was certified and recorded properly as to time and place. Before October 1, 1882, according to that account, advances had been made under the two mortgages amounting to twenty-four hundred and fifty dollars, while the credit to which Caffey shows himself to have been then entitled, amounted to only eight hundred and thirty-four dollars, leaving more than sixteen hundred dollars then unpaid. Of this sum, one thousand dollars was obtained after June 9, 1882, when the second mortgage was executed. The recovery in this action was seven hundred and eight dollars. Placing the credit, eight hundred and thirty-four dollars, to which Caffey was then entitled, on the item of debit first incurred, it leaves an indebtedness on October first of one thousand dollars, secured by the second mortgage,—much more than enough to uphold the recovery in this case, if the alleged conversion took place on October 1.

The next payment shown to have been made by Caffey was nine hundred and forty dollars, on October 19, 1882. His credits, up to that time, were thus increased to about seventeen hundred and eighty dollars. No other credits are shown on the account, or in the transcript. Suppose we place the alleged conversion after that time. This will not help the appellant. The debits against Caffey for advances had then reached thirty-one hundred and ninety-four dollars,—more than fourteen hundred dollars in excess of all credits. This was more than enough to uphold the recovery in this action.

We have presented the statements and calculations above, as the shortest, perhaps the simplest method, of answering many objections urged before us. It is manifest, as between Robinson & Ledyard on the one side, and Caffey on the other, the former, under the facts shown in this record, had the right to receive and appropriate the cotton they did re-

ceive, and that the effect of such receipt was a payment, *pro tanto*, of the oldest items of Caffey's account, including those secured only by the mortgage of March 4. It is equally manifest that Marks has shown neither interest nor right to object to such appropriation.

Caffey's mortgage to Murray was irrelevant to this transaction, and, under the rules laid down above, it should not have been received in evidence. Nor should the fact that some of the laborers worked on shares, in the present state of this record, exert any influence in this litigation. It will be time enough to consider their rights, when they, or some one claiming under them, asserts them.

The defendant asked fourteen charges, which were severally refused, and exceptions were reserved to each refusal. The principles stated above prove that the Circuit Court did not err in refusing charges 1, 2, 5, 6, 7, 8. Charges 3, 9, 10, 13, 14 were abstract, immaterial, and confusing, and were rightly refused on that account. We will defer the consideration of charges 4, 11, and 12, until we dispose of what we consider the main question in this cause. The question arises under the general charge given at the instance of the plaintiffs.

Testimony for plaintiffs showed " that thirteen or fourteen bales of cotton, in October, 1882, had been hauled from said place so cultivated by J. P. Caffey (mortgagor), by his direction, to the warehouse of the defendant in the city of Montgomery, and there stored in his name; that defendant was requested by Caffey to sell it for him, and that he did so, and turned the money, less 50 cents per bale for selling it, and less storage, over to Caffey, in two hours after the cotton was stored. . . . The evidence showed that the warehouse business was conducted by Marks & Fitzpatrick, of which defendant was a member, and that the cotton was stored in this warehouse; and that defendant alone was engaged in a commission business; and that the sale of the cotton was made by Gayle, a clerk of defendant, and the money, less 50 cents a bale, was paid by Lowe, another clerk of defendant, to Caffey—the commissions being credited to S. C. Marks' commission account. But plaintiffs introduced an admission in writing, made by defendant Marks, showing that Caffey was present at the time the cotton was brought to the warehouse, and requested him (Marks) to sell it; and that it was by his (Marks') direction that the cotton was sold and the money turned over to Caffey."

On this state of facts, two questions are sought to be raised : First, that if there was any conversion, it should have been left to the jury to determine whether it was by

Gayle or by Marks. Charge 12 sought to raise this question. If the testimony bearing on this question was at all indeterminate, we would hold this charge ought to have been given. We think, however, that the testimony, as shown in the bill of exceptions, leaves that question uncontroverted. If the facts, which we must treat as undisputed, amount to a conversion in law, then the Circuit Court would not have erred in charging upon that feature of the case, without hypothesis. There is no occasion to leave to the jury the ascertainment of any fact, which the record affirmatively shows was clearly proved, and not controverted. *Carter v. Chambers*, 79 Ala. 223.

It is contended, in the second place, that the sale of the cotton, and the payment of the proceeds to Caffey, under the circumstances disclosed in this record, do not, in law, amount to a conversion. Charge 11, asked by defendant, presents this question.

"The vendor is equally liable, whether he sells the property as his own, or as officer or agent."—Cooley on Torts, 451. "If a bailor has no title at the time of the bailment, the bailee can have none, for the bailor can give no better title than he has himself."—1 Add. on Torts, § 475; 2 *Ib.* § 1198. "An auctioneer who sells stolen goods is liable to the owner in an action of trover, notwithstanding that the goods were sold by him, and the proceeds paid over to the thief, without notice of the felony."—*Hoffman v. Carow*, 22 Wend. 285 ; *Coles v. Clark*, 3 Cush. (Mass.) 399. "Even an auctioneer or broker, who sells property for one who has no title, and pays over to his principal the proceeds, with no knowledge of the defect of title or want of authority, is held to be liable for its conversion to the real owner."—*Hills v. Snell*, 104 Mass. 173 ; *Williams v. Merle*, 11 Wend. 80; *Saltus v. Saltus*, 20 Wend. 266 ; *McGoldrick v. Willitts*, 52 N. Y. 612 ; *Pease v. Smith*, 61 N. Y. 477 ; *Pool v. Adkisson*, 1 Dana, 112 ; *Bristow v. Burt*, 7 Johns. 254 ; *Doty v. Hawkins*, 6 N. H. 247 ; *Perkins v. Smith*, 1 Wilson, 328 ; *Adamson v. James*, 4 Bing. 69 ; *White v. Spitigen*, 13 Mees. & Welsby, 603.

The mere receiving of goods, and restoring them to the bailor before notice that his possession was wrongful, is not a conversion.—*Nelson v. Iverson*, 17 Ala. 216. And some authorities are scarcely reconcilable with those cited above. 1 Pars. Contr. 520 ; Moak's Underhill on Torts, 575 ; *Roach v. Turk*, 9 Heisk. 708 ; s. c., 24 Amer. Rep. 360 ; *Parker v. Lombard*, 100 Mass. 405 ; *Spooner v. Holmes*, 102 Mass. 503 ; *Spooner v. Manchester*, 43 Amer. Rep. 514. The weight of authority is in favor of the position asserted. The Circuit Court did not err in refusing charge numbered 11.

[Marks v. Robinson & Ledyard.]

A single question remains—that raised by the fourth charge asked, in the following language; "That advances made by complainants (plaintiffs) after the sale of the cotton by Marks, are no lien on such cotton." The mortgages given by Caffey to Robinson & Ledyard each provides security for any future advances, and does not bind Robinson & Ledyard to make them.—*Collier v. Faulk*, 69 Ala. 58; *Lovelace v. Webb*, 62 Ala. 271; *Diver v. McLaughlin*, 20 Amer. Dec. 655, and note; *Nicklin v. Betts Spring · Company*, 50 Amer. Rep. 477.

We have shown above that, according to the account of Caffey with Robinson & Ledyard, as presented in the transcript, there was, irrespective of after advances, no time while cotton was being delivered, that the former was not indebted to the latter, for advances made under the June mortgage, in a greater sum than the value of the cotton in controversy, as shown by the recovery in this cause. Hence, if that account truly sets forth the facts, there was neither occasion nor field for operation of charge No. 4. The proof of that account was offered by defendant, and the account furnishes the only evidence on which the charge could become pertinent. The account, as we have seen, shows that the question sought to be raised by the charge was immaterial. In other words, the defendant, in proving the requisite facts on which to base charge 4 asked by him, proved other facts which show there was nothing for the charge to operate on. All the proof bearing on the question was introduced by defendant, is free from ambiguity and from conflict, and shows that the charge, if given, could have had no other effect than to confuse the jury with an immaterial inquiry. He must stand or fall on the case made by his own uncontroverted testimony. Charge 4 was rightly refused, whether correct in point of law or not.

The present case is manifestly one of hardship, and requires of factors, brokers, and auctioneers great circumspection, lest they incur a liability where they least suspect it.

Affirmed.